CAREN P. SENCER, Bar No. 233488
KERIANNE R. STEELE, Bar No. 250897
ERIC WIESNER, Bar No. 259672
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone  (510) 337-1001
Fax  (510) 337-1023
E-Mail:  courtnotices@unioncounsel.net
         csencer@unioncounsel.net
         ksteele@unioncounsel.net
         ewiesner@unioncounsel.net

SCOTT A. KRONLAND, Bar No. 171693
JEFFREY B. DEMAIN, Bar No. 126715
P. CASEY PITTS, Bar No. 262463
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-Mail: skronland@altshulerberzon.com
        jdemain@altshulerberzon.com
        cpitts@altshulerberzon.com

Attorneys for Defendant SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 521

*Additional Counsel for additional Defendant listed on following page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JORGE BERMUDEZ, et al.,<br><br>             Plaintiffs,<br><br><br>   and<br><br><br><br>SERVICE EMPLOYEES<br>INTERNATIONAL UNION, LOCAL 521,<br>and COUNTY OF SANTA CLARA,<br><br>             Defendants. | No. 3:18-cv-04312-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:  JANUARY 31, 2019<br>TIME: 10 A.M.<br>COURTROOM  4<br>JUDGE CHHABRIA<br><br>DEMAND FOR JURY TRIAL |

JAMES R. WILLIAMS (S.B.#271253)
NANCY J. CLARK (S.B. #157839)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
Email: Nancy.Clark@cco.sccgov.org

Attorneys for Defendant
COUNTY OF SANTA CLARA

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ....................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

     A.     FACTS ...................................................................................................................3

          1.     Jorge Bermudez ........................................................................................3

          2.     Virginia Valdez ........................................................................................4

          3.     Angelica Pedrozo .....................................................................................6

     B.     PROCEDURAL HISTORY....................................................................................7

II.     LEGAL STANDARD....................................................................................................8

III.     ARGUMENT ................................................................................................................8

     A.     PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE MOOT BECAUSE AGENCY FEE COLLECTIONS ENDED AFTER *JANUS* AND NO PLAINTIFF IS BEING COMPELLED TO PAY UNION DUES. ...................................................................................................................8

     B.     PLAINTIFFS ARE NOT ENTITLED TO RECOVER MEMBERSHIP DUES THAT THEY VOLUNTARILY PAID AFTER CHOOSING TO BECOME UNION MEMBERS...................................11

          1.     Plaintiffs Voluntarily Entered Into Membership Agreements with Local 521 and Chose To Pay Union Membership Dues. ...................................................................................11

          2.     Plaintiffs' Contractual Commitments Remain Fully Enforceable Post-*Janus*.............................................................13

     C.     PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY THE CALIFORNIA MEYERS-MILIAS-BROWN ACT. ..............................16

     D.     PLAINTIFFS' UCL CLAIM FAILS BECAUSE THE COLLECTION OF MEMBERSHIP DUES AND AGENCY FEES DOES NOT CONSTITUTE A "BUSINESS ACT OR PRACTICE" WITHIN THE MEANING OF BUSINESS & PROFESSIONS CODE SECTION 17200............................................20

E.　PLAINTIFFS' CLAIMS FOR A REFUND OF FAIR SHARE FEES ARE TIME-BARRED AND FAIL ON THEIR MERITS...................................................................................20

1.　Plaintiffs' Fair Share Fees-Related Claims Are Time-Barred..............................................................................21

2.　Pre-*Janus* Fair Share Fees Were Collected in Good Faith Reliance on State Law and Controlling Supreme Court Precedent...........................................................22

3.　Plaintiffs' state law claims are precluded by California Government Code Section 1159. ...............................24

IV.　CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Abood v. Bd. of Educ.,*
431 U.S. 209 (1977)............................................................................... *passim*

*Already, LLC v. Nike, Inc.,*
568 U.S. 85 (2013)........................................................................................9

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)......................................................................................8

*Augustine v. United States,*
704 F.2d 1074 (9th Cir. 1983) ......................................................................8

*Bain v. Cal. Teachers Ass'n,*
891 F.3d 1206 (9th Cir. 2018) ....................................................................13

*Bain v. CTA,*
156 F.Supp.3d 1142 (C.D. Cal. 2015) ........................................................12

*Belgau v. Inslee,*
2018 U.S. Dist. LEXIS 175543 (W.D. Wash. Oct. 11, 2018) ....................16

*Berkshire Fashions, Inc. v. M.V. Hakusan II,*
954 F.2d 874 (3d Cir. 1992)..........................................................................8

*Brady v. United States,*
397 U.S. 742 (1970)....................................................................................14

*Buckley v. Valeo,*
424 U.S. 1 (1976)........................................................................................12

*Clark v. City of Seattle,*
2017 U.S. Dist. LEXIS 136322 (W.D. Wash. Aug. 24, 2017) ...................13

*Clement v. City of Glendale,*
518 F.3d 1090 (9th Cir. 2008) ....................................................................22

*Cohen v. Cowles Media Co.,*
501 U.S. 663 (1991)....................................................................................15

*Coltec v. Hobgood,*
280 F.3d 262 (3d Cir. 2002)........................................................................14

*Danielson v. AFSCME Council 28,*
No. 3:18-cv-05206-RJB (W.D. Wash. Nov. 28, 2018)...............................23

*Danielson v. Inslee,*
    2018 U.S. Dist. LEXIS 139032 (W.D. Wash. Aug. 16, 2018) ................................................. 9

*Davis v. FEC,*
    554 U.S. 724 (2008) ................................................................................................................ 8

*Dingle v. Stevenson,*
    840 F.3d 171 (4th Cir. 2016) ................................................................................................ 14

*Farrell v. IAFF,*
    781 F. Supp. 647 (N.D. Cal. 1992) ....................................................................................... 13

*Fisk v. Inslee,*
    2017 U.S. Dist. LEXIS 170910 (W.D. Wash. Oct. 16, 2017) ............................................... 16

*Hoffman v. Inslee,*
    2016 U.S. Dist. LEXIS 146276 (W.D. Wash. Oct. 20, 2016) .............................................. 24

*Janus v. AFSCME Council 31,*
    138 S.Ct. 2448 (2018) .................................................................................................... *passim*

*Jarvis v. Cuomo,*
    660 F. App'x 72 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) .................................. 23

*Jones v. Blanas,*
    393 F.3d 918 (9th Cir. 2004) ................................................................................................ 21

*Jordan v. Fox, Rothschild, O'Brien & Frankel,*
    20 F.3d 1250 (3d Cir. 1994) .................................................................................................. 22

*Kidwell v. Transp. Commc'ns Int'l Union,*
    946 F.2d 283 (4th Cir. 1991) ................................................................................................ 13

*Lagana v. Democratic Party,*
    2013 U.S. Dist. LEXIS 12743 (N.D. Cal. Jan. 30, 2013) ..................................................... 21

*Lamberty v. Conn. State Police Union,*
    2018 U.S. Dist. LEXIS 179805 (D. Conn. Oct. 19, 2018) .................................................... 10

*Lemon v. Kurtzman,*
    411 U.S. 192 (1973) .............................................................................................................. 23

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) .............................................................................................................. 22

*Masters v. Screen Actors Guild,*
    2004 U.S. Dist. LEXIS 27297 (C.D. Cal. Dec. 7, 2004) ...................................................... 13

*McDougal v. County of Imperial*,
    942 F.2d 668 (9th Cir. 1991) .............................................21

*Minn. State Bd. for Cmty. Colleges v. Knight*,
    465 U.S. 271 (1984) ...........................................................13

*NLRB v. U.S. Postal Service*,
    827 F.2d 548 (9th Cir. 1987) .............................................13

*Pinsky v. Duncan*,
    79 F.3d 306 (2d Cir. 1996)...........................................22, 23

*Public Utilities Comm'n of Cal. v. FERC*,
    100 F.3d 1451 (9th Cir. 1996) ...........................................10

*Smith v. Super. Ct.*,
    2018 U.S. Dist. LEXIS 196089 (N.D. Cal. Nov. 16, 2018)...................15

*Sze v. INS*,
    153 F.3d 1005 (9th Cir. 1998) ...........................................10

*Tecza v. Univ. of San Francisco*,
    532 Fed. App'x 667 (9th Cir. 2013) .....................................20

*United States v. Johnson*,
    67 F.3d 200 (9th Cir. 1995) .............................................14

*Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*,
    76 F.3d 692 (6th Cir. 1996) .............................................22

*Winner v. Rauner*,
    2016 U.S. Dist. LEXIS 175925 (N.D. Ill. Dec. 20, 2016) ...................24

*Wyatt v. Cole*,
    504 U.S. 158 (1992)....................................................22, 23

*Wyatt v. Cole*,
    994 F.2d 1113 (5th Cir. 1993), ..........................................22

*Yohn v. California Teachers Ass'n*,
    No. 8:17-cv-00202-JLS-DFM, slip op. (C.D. Cal. Sept. 28, 2018)............9

**State Cases**

*Bell v. Bank of California*,
    153 Cal. 234 (1908) .....................................................21

*Country Eggs, Inc. v. Kawamura,*
129 Cal. App. 4th 589 (2005) ...............................................15

*Cumero v. PERB,*
49 Cal.3d 575 (1989) ...............................................18, 19

*Dinh Ton That v. Alders Maintenance Ass'n,*
206 Cal. App. 4th 1419 (2012) ...............................................20

*El Rancho Unified School District v. National Education Ass'n,*
33 Cal.3d 946 (1983) ...............................................17, 18, 19

*Leek v. Washington Unified School District,*
124 Cal.App.3d 43 (1981) ...............................................18

*Link v. Antioch Unified School District,*
142 Cal.App.3d 765 (1983) ...............................................18

*Lowe v. Ozmun,*
137 Cal. 257 (1902) ...............................................21

*Maguire v. Hibernia S. & L. Soc.,*
23 Cal.2d 719 (1944) ...............................................21

*Redwoods Cmty. College Dist. v. PERB,*
159 Cal.App.3d 617 (1984) ...............................................17

*San Jose Teachers Association v. Superior Court,*
38 Cal.3d 839 (1985) ...............................................18

*Strasberg v. Odyssey Group,*
51 Cal.App.4th 906 (1996) ...............................................21

**Federal Statutes**

42 U.S.C. § 1983 ............................................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................8, 20

Cal. Code Civ. Proc. § 335.1 ...............................................21

Cal. Code Civ. Proc. § 338 ...............................................21

Cal. Gov't Code § 1159 ...............................................24

Cal. Gov't Code § 3500 *et seq.* ............................................................................ *passim*

Cal. Gov't Code § 3501 ...........................................................................................17

Cal. Gov't Code § 3502 .................................................................................18, 19, 23

Cal. Gov't Code § 3506 .....................................................................................18, 19

Cal. Gov't Code § 3506.5 ..................................................................................18, 19

Cal. Gov't Code § 3508.5 ..................................................................................18, 19

Cal. Gov't Code § 3509 ...........................................................................................19

Cal. Gov't Code §§ 3540-49.3 ...........................................................................17, 18

**Rules**

Fed. Rule Civ. Proc. 12(h)(3).....................................................................................8

Fed. Rule Civ. Proc. 56 ........................................................................................2, 8

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 175(1) .......................................................14

## **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on January 31, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, Courtroom 4, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, defendants Service Employees International Union, Local 521 ("Local 521") and the County of Santa Clara ("County") will, and hereby do, move this Court to grant summary judgment on all claims.

This motion is made on the ground that undisputed facts establish that plaintiffs' claims are meritless. Plaintiffs' claims for prospective injunctive and declaratory relief are moot because defendants ceased collecting fair share fees after the Supreme Court issued its decision in *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (2018), and defendants complied with plaintiffs' post-*Janus* requests to resign their union membership and cease paying membership dues. Plaintiffs' claims for retrospective monetary relief based on their pre-*Janus* payment of membership dues are without merit because plaintiffs voluntarily chose to become union members and pay union dues. Plaintiffs' claims for retrospective monetary relief based on plaintiff Bermudez's payment of pre-*Janus* fair share fees are time-barred and prohibited by the good faith defense and California law. Plaintiffs' state law claims to recover pre-*Janus* dues and fees are also preempted by the Meyers-Milias-Brown Act, Cal. Gov't Code §3500 *et seq.*

This motion is based on this Notice of Motion and Motion for Summary Judgment; the accompanying Memorandum of Points and Authorities, Declarations of Ming Lee and Veronica Niebla, and Request for Judicial Notice; any evidence and/or argument that defendants present on reply; the Court record in this action; all matters of which the Court may take notice; and such argument as the Court permits.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs in this lawsuit are three employees of the County represented in collective bargaining by Local 521. Prior to June 27, 2018, plaintiffs had the choice under California law—and as permitted by longstanding United States Supreme Court precedent, *see Abood v. Bd.*

*of Educ.*, 431 U.S. 209 (1977)—to either become members of Local 521 and pay full union membership dues, or decline to join Local 521 and pay Local 521 a reduced "fair share" fee covering their portion of the cost of Local 521's collective bargaining on their behalf. All three plaintiffs chose to join Local 521 and pay union membership dues.

On June 27, 2018, the United States Supreme Court issued its decision in *Janus* overturning *Abood* and holding that compulsory public employee fair share fees violate the First Amendment. Upon issuance of the decision, the County stopped deducting fair share fees and Local 521 stopped accepting such fees.

Through this lawsuit, Plaintiffs seek both injunctive relief prohibiting defendants' future collection of fair share fees *and* union membership dues, as well as a refund of the membership dues that plaintiffs voluntarily paid to Local 521 prior to *Janus* and the fair share fees that plaintiff Bermudez paid to Local 521 until January 2015. The undisputed facts show that Plaintiffs' claims are without merit and must be dismissed.

Plaintiffs' claims for prospective injunctive and declaratory relief fail because the defendants stopped collecting fair share fees as soon as *Janus* was decided, and they have honored the plaintiffs' requests to resign their union memberships and cease paying union dues.

Plaintiffs' claims for a refund of membership dues paid prior to *Janus* fail because those payments were entirely voluntary and consistent with state and federal law. Indeed, plaintiffs' payments were made pursuant to binding contractual agreements that cannot be undone *ex post facto* simply because *Janus* now prohibits the collection of fair share fees.

To the extent that plaintiffs seek a refund of pre-*Janus* fair share fees, their claims are time-barred and prohibited by the good faith defense, and their state law claims are also prohibited by California law.

Finally, Plaintiffs' state law claims to recover their dues and fees are also preempted by the Meyers-Milias-Brown Act ("MMBA"), Cal. Gov't Code §3500 *et seq.*

Accordingly, judgment should be entered for Defendants pursuant Rule 56.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     FACTS

### 1.     Jorge Bermudez

Plaintiff Jorge Bermudez ("Bermudez") began his employment with the County in its Department of Employment and Benefit Services ("DEBS") in 2007. First Amended Complaint, Dkt. No. 21 ("FAC"), ¶1. Pursuant to the MMBA, Local 521 represents the bargaining unit that includes Bermudez's position in collective bargaining with the County. FAC ¶5.

Bermudez became a member of Local 521 on January 22, 2015, when he concurrently signed a "Membership Application," designating Local 521 as his bargaining agent, *see* Declaration of Ming Lee ("Lee Decl."), filed herewith, ¶3, Ex. B; *see also* Declaration of Veronica Niebla ("Niebla Decl."), filed herewith, ¶4, and a "Payroll Deduction Authorization," expressly authorizing the County to deduct membership dues from his wages, Lee Decl. ¶4, Ex. C. Prior to joining Local 521 in 2015, Bermudez was a fair share fee payer. Membership in the union and deduction of union membership dues from wages has never been a condition of employment and has always been completely voluntary under the Memorandum of Understanding between the County and Local 521 ("MOU"). *See* Lee Decl., ¶31, Ex. AA (MOU Art. 3, §3.2(a)).

On September 19, 2017, Bermudez again signed a union "Membership Application" reaffirming his voluntary choice to maintain membership in Local 521 and directing the County "to deduct membership dues from [his] earnings and to transfer that money to Local 521." Lee Decl. ¶5, Ex. D. The Membership Application stated, "If I resign my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues." *Id*.

On or around July 5, 2018, Local 521 received a letter from Bermudez requesting to "opt-out from contributing any fees to the union." Lee Decl. ¶6, Ex. E. Local 521 honored Bermudez's request for an immediate cessation of all deductions even though under the express terms of the September 19, 2017 membership card, he had agreed to continue paying a service

fee in an amount equal to membership dues for a set period of time. *Id.* ¶7. On July 12, 2018, Ming Lee, Local 521's Director of Finance, sent a letter to Bermudez informing him that Local 521 had received, and was processing, his request. *Id.*, Ex. F.

On or around July 17, 2018, Local 521 sent the County, by email, an updated list of bargaining unit members who had indicated that they no longer wished to be Local 521 members. Lee Decl. ¶8, Exs. G, H; Niebla Decl. ¶5. Bermudez was included in this list. Lee Decl. ¶8, Ex. G; Niebla Decl. ¶5. The County was unable to make the changes requested in the July 17, 2018 email immediately due to its need to establish a certification process. Niebla Decl. ¶6. This process was delayed in part by the absence of key County staff during this period. *Id.*

On or around August 7, 2018, Local 521 sent a letter to Bermudez explaining that the County had not yet been able to comply with Local 521's request to stop his dues deductions, and that a check in the amount of $79.48 was enclosed as a full reimbursement, with interest, for all July dues deductions. Lee Decl. ¶9, Ex. I.

On or around August 15, 2018, Local 521 sent a letter to Bermudez explaining that Local 521 had confirmed with the County that dues deduction for Bermudez would cease after his August 17, 2018 paycheck, and that a check in the amount of $39.73 was enclosed as full reimbursement for the deduction anticipated to be made on August 17. Lee Decl. ¶10, Ex. J.

On August 31, 2018, Bermudez deposited the checks included with the August 7 and August 15 letters. Lee Decl. ¶¶12,13, Exs. K, L. On that same date, the County confirmed that no membership dues or fair share fees were deducted subsequent to the August 17 paycheck, and that no further deductions would be made in the future. *Id.* ¶11; Niebla Decl. ¶7.

### 2. **Virginia Valdez**

Plaintiff Virginia Valdez ("Valdez") began her employment with the County in DEBS in 2000. FAC ¶2. Valdez became a member of Local 521 on April 6, 2000, when she signed a "Membership Application" designating Local 715, the predecessor union to Local 521, as her bargaining agent.[1] Lee Decl. ¶14, Ex. M.

---

[1] The Membership Application is signed by Virginia Salinas, the name that Valdez previously

On January 26, 2004, and again on January 14, 2008, Valdez signed "Employee Authorization for Payroll Deduction of Union Membership or Agency Fees" forms. Lee Decl. ¶¶15-16, Exs. N, O. On them, Valdez checked the box electing to become a union member to enjoy "full membership rights including the right to attend all meetings, hold office, and vote." *Id.* The forms authorized the County "to deduct the appropriate sums . . . from [Valdez's] wages in payment of membership or agency fees and to pay over such to the appropriate organization," and provided the County with her "consent to the adjustment of such fees to reflect any change as may hereafter be established by [the union]." *Id.*

On March 10, 2016, Valdez signed another "Employee Authorization for Payroll Deduction of Union Membership or Agency Fees" form. Lee Decl. ¶18, Ex. P.[2] On it, Valdez checked the box electing to pay a service fee in lieu of union membership dues. *Id.* On March 21, 2016, Local 521 sent the form back to Valdez with a note indicating that it had not been processed. *Id.* Local 521 treated the form as an administrative error because Valdez was registered as a Local 521 member and had never notified the union that she wished to resign her union membership. *Id.* ¶19. Local 521 did not receive any further correspondence from Valdez regarding her membership until August 2018. *Id.*

Valdez served as a Local 521 shop steward from August 8, 2011 through September 30, 2012, and from April 26, 2017 through June 4, 2018. Lee Decl. ¶20. The role of shop steward is a voluntary unpaid position for Local 521 members who wish to increase their level of involvement and commitment with the union beyond that of a regular member. *Id.* Shop stewards take on substantial responsibilities with respect to member representation, contract enforcement, and bargaining. *Id.* Valdez could not have become a shop steward in 2017 had she not been a full voluntary member of Local 521. *Id.*

---

used. *See* Lee Decl. ¶14.

[2] The County's practice was to provide employees with a new deduction authorization form each time they were transferred or moved to a new position within the employer, which is why Valdez received the January 2008 and March 2016 forms. Lee Decl. ¶17; *see also id.* ¶¶ 16, 18, Exs. O, P.

On August 7, 2018, Local 521 received a letter from Valdez stating, "I no longer want to be a fee paying member of S.E.I.U. Please stop deducting dues effective immediately." Lee Decl. ¶21, Ex. Q. The next day, Local 521 sent a letter to Valdez stating that Local 521 had "received [her] request to resign [her] membership and/or revoke [her] dues," and informing her that her "request has been processed." *Id*. ¶22, Ex. R. On or around August 13, 2018, Local 521 sent the County, by email, an updated list of bargaining unit employees who had indicated that they no longer wished to be union members. Lee Decl. ¶23, Exs. S, T; Niebla Decl. ¶9. Valdez was included on this list. Lee Decl. ¶22, Exs. S, T; Niebla Decl. ¶9.

On August 17, 2018, a final membership dues payment of $35.95 was deducted from Valdez's paycheck to cover dues for the pay period from July 30, 2018 to August 12, 2018. Lee Decl. ¶24; Niebla Decl. ¶10. No further union-related deductions have been made from Valdez's wages since then. Lee Decl. ¶24; Niebla Decl. ¶10. On October 30, 2018, Local 521 issued a check to Valdez in the amount of $35.97 representing a full reimbursement of her last dues deduction, with interest. Lee Decl. ¶24.

### 3. Angelica Pedrozo

Plaintiff Angelica Pedrozo ("Pedrozo") began her employment with the County in the Department of Child Support Services in 2001, and then transferred to DEBS in 2005. FAC ¶ 3. Pedrozo first became a member of Local 521 on September 28, 2001, when she signed an "Employee Authorization for Payroll Deduction of Union Membership or Agency Fees" form.[3] Lee Decl. ¶25, Ex. V. On it, Pedrozo checked the box electing to become a union member to enjoy "full membership rights including the right to attend all meetings, hold office, and vote." *Id*. That form also authorized the County "to deduct the appropriate dues or fees as authorized by [Local 521] from [Pedrozo's] wages," and provided the County with her "consent to the adjustment of such fees to reflect any change as may hereafter be established by [the union]." *Id*.

On September 12, 2005, Pedrozo signed another "Employee Authorization for Payroll

---

[3] The authorization form is signed by Angelica Soto, the name that Angelica Pedrozo previously used. Lee Decl. ¶25.

Deduction of Union Membership or Agency Fees" form. Lee Decl. ¶26, Ex. W. On it, Pedrozo checked the box electing to pay a fair share fee in lieu of union membership dues. *Id.* Local 521 processed the new payroll authorization as a request to change to fair share fee payer status. *Id.*

Pedrozo rejoined Local 521 on December 2, 2005 when she signed a "Membership Application/Payroll Authorization," designating Local 521 as her bargaining agent and authorizing dues deductions. Lee Decl. ¶27, Ex. X.

On November 20, 2007, Pedrozo signed an authorization to deduct $1 per pay period from her wages for the Local 521 Committee on Political Education (COPE). Lee Decl. ¶28, Ex. Y. Local 521 members are not required to make contributions to COPE, and doing so is a voluntary choice by each individual member to support the union's political activities.

On September 19, 2017, Pedrozo signed a union "Membership Application" reaffirming her voluntary desire to maintain her status as a member of Local 521 and directing the County "to deduct membership dues from [her] earnings and to transfer that money to Local 521." Lee Decl. ¶29, Ex. Z. The Membership Application also stated, "If I resign my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues." *Id.*

To date, neither Local 521 nor the County has received from Pedrozo any notification that she wishes to resign her membership or cease deductions for membership dues or COPE contributions; consequently, she continues to be a member and COPE contributor. Lee Decl. ¶30; Niebla Decl. ¶11.

## B.    PROCEDURAL HISTORY

Bermudez filed the original Complaint in this action on July 17, 2017. Dkt. #1. Bermudez filed the First Amended Complaint on September 10, 2018, adding Valdez and Pedrozo as additional plaintiffs. FAC ¶¶2-3, Dkt. #21. The First Amended Complaint challenges defendants' "deduction of union dues, fair share service fees, and/or agency fees" from plaintiffs and the putative class members under four different causes of action: (1) a federal claim under 42 U.S.C. §1983, FAC ¶¶32-38; (2) a California common law conversion claim, *id.*

¶¶39-42; (3) a California common law restitution claim against Local 521, *id.* ¶¶43-49; and (4) a claim against Local 521 under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*, FAC ¶¶50-53. The First Amended Complaint asks this Court to declare that the First Amendment prohibits defendants from "withhold[ing] or requir[ing] payment of union dues, fair share service fees, or agency fees from Plaintiffs and class members" and that "[a]ny collective bargaining agreement provision imposing union dues, fair share service fees, or agency fees against Plaintiffs or the class members is unconstitutional … and is null and void," *id.* at 13; to enjoin defendants "from collecting union dues, fair share service fees, or agency fees from Plaintiffs or the class members," *id.*; and to "[a]ward Plaintiffs damages under 42 U.S.C. §1983" and "[o]rder Local 521 to disgorge and refund all union dues, fair share service fees, and agency fees unlawfully withheld or collected … from Plaintiffs and the class members," *id.*

## II.  <u>LEGAL STANDARD</u>

Rule 56 requires the entry of summary judgment where the pleadings and other papers on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

Because mootness deprives a federal court of subject matter jurisdiction, it may be raised at any time under Rule 12(h)(3). *Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983); *see also Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n.3 (3d Cir. 1992). In considering a motion to dismiss for lack of subject matter jurisdiction, including a motion arising under Rule 12(h)(3), the Court is not limited to the facts alleged in the pleadings, and may consider declarations and other evidence in the record. *Augustine*, 704 F.2d at 1077.

## III.  <u>ARGUMENT</u>

**A.  PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE MOOT BECAUSE AGENCY FEE COLLECTIONS ENDED AFTER *JANUS* AND NO PLAINTIFF IS BEING COMPELLED TO PAY UNION DUES.**

Plaintiffs must establish Article III jurisdiction for each form of relief they seek. *Davis v.*

*FEC*, 554 U.S. 724, 734 (2008).  A claim "becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (internal quotations and citations omitted).  Here, plaintiffs' claims for declaratory and injunctive relief are moot because the County and Local 521 stopped collecting fair share fees after *Janus* was issued, and they ceased deducting dues from the wages of the plaintiffs who resigned their union memberships, Bermudez and Valdez, even before those plaintiffs filed suit.[4]

Upon issuance of the *Janus* decision, the County and Local 521 took the steps necessary to ensure that no further fair share fee deductions would occur.  Niebla Decl. ¶3; Lee Decl. ¶¶ 33-35.  Local 521 sent the County (as well as every other public employer with whom it had a collective bargaining agreement providing for the payment of fair share fees) letters requesting that they immediately terminate any collection of fair share fees.  Lee Decl. ¶33, Ex. BB. Consistent with Local 521's request, the County, in processing the payroll for July 6, 2018 (the first pay date after *Janus* had issued), ceased all fair share fee deductions.  Niebla Decl. ¶3. Local 521 has not retained any fair share fees for payroll periods falling on or after June 27, 2018.  Lee Decl. ¶¶ 34-35.

Accordingly, even before the original Complaint in this lawsuit had been filed, there was no longer an "actual, live controversy" sufficient to establish this Court's jurisdiction over Plaintiffs' claims for prospective declaratory and injunctive relief regarding the compulsory fair share fees.  Those claims must therefore be dismissed.  *See Danielson v. Inslee*, 2018 U.S. Dist. LEXIS 139032, at *9 (W.D. Wash. Aug. 16, 2018) (dismissing claims for injunctive relief where defendants stopped collecting fair share fees upon issuance of *Janus* decision); *Yohn v. California Teachers Ass'n*, No. 8:17-cv-00202-JLS-DFM (Dkt. 198), slip op. at 6-7 (C.D. Cal. Sept. 28, 2018) (attached as Exhibit 1 to the Request for Judicial Notice ("RJN") submitted

---

[4] Pedrozo has never notified Local 521 that she wishes to resign her union membership, and she remains a dues-paying member.  Lee Decl. ¶27; Niebla Decl. ¶10.  Should Pedrozo submit a resignation, Local 521 will terminate her membership and stop accepting membership dues from her, as it did for Bermudez and Valdez.

herewith) (same); *Lamberty v. Conn. State Police Union*, 2018 U.S. Dist. LEXIS 179805, at *26-27 (D. Conn. Oct. 19, 2018) (same).

Plaintiffs' payroll deductions did not automatically cease after *Janus* because they were union members, not the fair share fee payers whose rights were at issue in *Janus*. Nonetheless, deductions of membership dues from Bermudez's and Valdez's wages ceased soon after they notified Local 521 that they wished to resign their union membership. Lee Decl. ¶¶ 8, 11, 23, 24; Niebla Decl. ¶¶ 7, 10. Local 521 instructed the County to stop deducting Bermudez's and Valdez's dues, based on his or her resignation from the union, *before* Defendants received notice of their claims in this lawsuit. *Compare* Lee Decl. ¶8, Exs. G, H, Niebla Decl. ¶5 (Local 521 notified the County of Bermudez's change in status on July 17, 2018); Lee Decl. ¶23, Exs. S, T, Niebla Decl. ¶9 (Local 521 notified the County of Valdez's change of status on Aug. 13, 2018), *with* Complaint (filed on behalf of Bermudez only July 17, 2018), FAC (filed on behalf of all three Plaintiffs September 10, 2018).

Accordingly, just as with their fair share fees claims, there also is no live issue as to the ongoing payment of "coerced" membership dues sufficient to support plaintiffs' claims for prospective relief with respect to such payments. The two plaintiffs who resigned their union membership are no longer paying membership dues and have received full reimbursement with interest of any post-resignation deductions. *See* Lee Decl. ¶¶ 9, 10, 12, 13, 24, Exs. I-L, U. Plaintiff Pedrozo is free to resign her membership at any time, but has not attempted to do so since signing her Membership Application in December 2005. *See* Lee Decl. ¶ 30, Niebla Decl. ¶ 11. Because there is no live controversy, plaintiffs' claim for prospective injunctive and declaratory relief regarding the payment of membership dues must also be dismissed.[5]

---

[5] Plaintiffs have no argument that their prospective relief claims remain viable on the theory that fair share fees and membership dues ended due to the defendants' "voluntary cessation" of fee collections. The "voluntary cessation" exception to mootness does not apply where, as here, the change in conduct occurred prior to service of the lawsuit, due to an intervening change in the law. *Public Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996); *see also Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998) ("For the [voluntary cessation] exception to apply ... the INS's voluntary cessation must have arisen *because of* the litigation.") (citation omitted). And in any event, voluntary cessation *does* moot a case where (as here) the challenged conduct

### B. PLAINTIFFS ARE NOT ENTITLED TO RECOVER MEMBERSHIP DUES THAT THEY VOLUNTARILY PAID AFTER CHOOSING TO BECOME UNION MEMBERS.

All four causes of action that plaintiffs assert in support of their argument that union dues paid prior to *Janus* must be refunded rest on a single faulty theory: that plaintiffs' payment of those dues was unlawful because they were compelled "to subsidize private speech on matters of substantial public concern" in violation of their First Amendment rights. FAC ¶19; *see also id.* ¶42 (premising conversion claim on "wrongful" conduct by Local 521); *id.* ¶45 (premising restitution claim on "unconstitutional" collection of union dues); *id.* ¶54 (premising UCL claim on conduct "prohibited under [*Janus*]"). That theory fails for the simple reason that plaintiffs' payment of union membership dues was entirely voluntary and was not "compelled" in any manner that could trigger First Amendment concerns. Indeed, by deciding to pay union dues in exchange for the full benefits of membership, Plaintiffs entered into valid contracts with Local 521 that are fully enforceable under state and federal law and that are unaffected by any subsequent changes to the law, including *Janus*. That plaintiffs may now regret their voluntary decision to join Local 521 and pay membership dues does not give them any legal claims under state or federal law to recoup those dues.

### 1. Plaintiffs Voluntarily Entered Into Membership Agreements with Local 521 and Chose To Pay Union Membership Dues.

Prior to July 6, 2018, when the County ceased all fair share fee deductions in response to *Janus*, Niebla Decl. ¶3, the Memorandum of Understanding ("MOU") between the County and Local 521 required that all bargaining unit employees elect one of three payroll deductions: (1) union dues, (2) a fair share fee, representing a percentage of membership dues corresponding to "chargeable" expenses under the framework set out in *Abood*, or (3) a religious objector exemption. Lee Decl. ¶¶28-29. All three plaintiffs voluntarily chose, at relevant times, to join the union and pay union dues, even though it entailed a substantially higher financial commitment. *See* Lee Decl. Exs. A-D, M-O, V, X, Z (Plaintiffs' signed membership

---

could not reasonably be expected to recur.

applications).[6]  In exchange for assuming this financial commitment, plaintiffs received the full benefits of union membership, including the right to attend all union meetings, run for and hold union office, vote in union elections, and serve as shop stewards.  Although plaintiffs did not have the option of declining to pay either membership dues or agency fees, their decision to pay membership dues was fully voluntary under the available information and governing law at the time.

The First Amendment prohibits the government from *compelling* an individual to subsidize another private party's expressive activities.  *See, e.g.*, *Janus*, 138 S.Ct. at 2464 (explaining that "*compelled* subsidization of private speech seriously impinges on First Amendment rights") (emphasis added).  Where such subsidies are paid voluntarily instead of being compelled by the government, they constitute a form of expressive activity that is protected—not proscribed—by the First Amendment.  *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 16 (1976).  Because plaintiffs voluntarily chose to join Local 521 and pay union membership dues, there is no merit to plaintiffs' First Amendment challenge to the payment of such dues, and their derivative state law claims—which are premised on the purported unconstitutionality of those payments—likewise fail.

Plaintiffs assert that they would have opted to not pay union membership dues if they could have paid no fees to Local 521 (as they can now do after *Janus*) instead of facing the alternative of paying fair share fees. *See* FAC ¶¶ 15-18.  But the mere fact that plaintiffs' post-*Janus* options differ from those they faced under pre-*Janus* California law and Supreme Court precedent falls far short of making their decision to join Local 521 non-voluntary, government-compelled, or the product of government coercion or duress.  Indeed, that California law required plaintiffs to choose between paying union membership dues and fair share fees does not make plaintiffs' choice to pay union dues the result of state action, as it must be for plaintiffs to state a §1983 First Amendment claim. *See generally Bain v. CTA*, 156 F.Supp.3d 1142 (C.D.

---

[6] Before *Janus*, Local 521's fair share fees ranged from 0.8555% of wages to 0.943% of wages, while membership dues amounted to 1.5% of wages.  Lee Decl. ¶ 32.  Thus, fair share fees ranged from 57.03% to 62.91% of membership dues.  *Id.*

Cal. 2015). It certainly does not provide any basis for allowing plaintiffs to demand a refund of the dues that they paid in exchange for benefits received from Local 521.

There is nothing coercive in presenting employees with an option to pay more for union membership in order to receive added benefits. To the contrary, in the context of public-sector collective bargaining, the Supreme Court has emphasized that the pressure that union-represented employees may feel to join the union is "no different from the pressure to join a majority party that persons in the minority always feel" and "does not create an unconstitutional inhibition on associational freedom." *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 290 (1984); *see also Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1219-20 (9th Cir. 2018); *Clark v. City of Seattle*, 2017 U.S. Dist. LEXIS 136322, at *9-10 (W.D. Wash. Aug. 24, 2017). "Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily." *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991) (addressing voluntary union members' limited First Amendment rights to challenge union expenditures); *cf. Masters v. Screen Actors Guild*, 2004 U.S. Dist. LEXIS 27297, *16 n.6 (C.D. Cal. Dec. 7, 2004) (citing *Kidwell* to find that "a union is entitled to require, as a condition of membership, that members pay a fee that covers the costs of both the union's non-representational and representational activities"); *Farrell v. IAFF*, 781 F. Supp. 647, 649 (N.D. Cal. 1992) (following *Kidwell* and rejecting First Amendment claims brought by public sector union members).

## 2. Plaintiffs' Contractual Commitments Remain Fully Enforceable Post-*Janus*.

Standing alone, the fact that plaintiffs voluntarily chose to join Local 521 and pay union membership dues is fatal to all of their claims. That plaintiffs' decision was not the product of coercion or compulsion is made even more apparent by the fact that plaintiffs' contractual agreements with Local 521 remain fully enforceable under federal and state law post-*Janus*.

In choosing to join the union and agreeing to pay membership dues, union members enter into voluntary and fully enforceable contractual agreements with their union. *See NLRB v. U.S. Postal Service*, 827 F.2d 548, 554 (9th Cir. 1987) (recognizing dues-deduction authorization as

contract).  A person seeking to void such a contract on grounds of duress must prove multiple elements, the most basic of which is that the person was induced to sign the contract by an improper *threat*—*i.e.*, a communication that instills fear in the person that, unless she signs the demanded contract, she will face some consequence worse than the status quo existing in the absence of the contract.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 175(1).  Here, plaintiffs did not face any consequence worse than the status quo; indeed, the fair share fees they would have been required to pay to Local 521 were substantially lower than the membership dues they chose to pay.

While plaintiffs premise their claims on the legal change brought about by the *Janus* decision, parties cannot rescind their contractual commitments—let alone seek to claw back money paid in exchange for already-provided contractual benefits—based on later changes in the law.  In *Coltec v. Hobgood*, 280 F.3d 262 (3d Cir. 2002), for example, a coal company attempted to rescind a contract in which it had agreed to make certain regular payments to a benefit fund in exchange for the fund's agreement to accept a cap on the total amount of the payments.  *Id.* at 267-68.  The company claimed it entered into the agreement because of the existence of a statutory provision that the Supreme Court later held unconstitutional.  *Id.*  The Third Circuit rejected the company's attempt to rescind the agreement, reasoning "that a change in law does not, alone, justify such relief, even when the change is based on constitutional principles."  *Id.* at 277.  Even in cases involving plea agreements—contracts that waive an individual's fundamental right to personal liberty—courts steadfastly apply the principle that subsequent judicial decisions do not allow rescission.[7]  Accordingly, plaintiffs cannot seek a refund of the money they

_____

[7] In *Brady v. United States*, 397 U.S. 742 (1970), for example, the Supreme Court held that a criminal defendant could not rescind his plea agreement even though he claimed he entered the plea under the pressure induced by a death penalty statute later found by the Supreme Court to have been unconstitutional.  *Id.* at 756-57; *see also, e.g.*, *Dingle v. Stevenson*, 840 F.3d 171, 175-76 (4th Cir. 2016) ("Contracts in general are a bet on the future. . . . Some element of pressure exists in every deal, as the tradeoff between present certainty and future uncertainty is emblematic of the process of plea bargaining."); *United States v. Johnson*, 67 F.3d 200, 201-02 (9th Cir. 1995) (defendant's waiver encompassed appeals arising out of a law enacted in the period between his plea and sentencing even though "the sentencing law changed in an unexpected way" at that time).

committed to pay pursuant to their voluntary decision to join Local 521 simply because they would make a different decision now. *See, e.g.*, *Country Eggs, Inc. v. Kawamura*, 129 Cal. App. 4th 589, 595 (2005) (courts "have not looked favorably on the entreaties of parties trying to escape" their obligations based on subsequent legal developments that lead them to regret their original decisions) (citing *Coltec*, 280 F.3d at 274).

Nor does the fact that plaintiffs allege that their union dues payments implicated their First Amendment interests change the analysis. First, the private agreement between Plaintiffs and Local 521 does not involve the kind of state action necessary to state a First Amendment or § 1983 claim. *See supra* Part B. 1. Second, and in any event, "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen v. Cowles Media Co*., 501 U.S. 663, 672 (1991). In *Cohen*, the Supreme Court rejected the claim that the First Amendment prohibited enforcement of a newspaper's promise not to reveal the identity of a confidential source. The newspaper had breached its promise and the source sued in state court under the doctrine of promissory estoppel. *Id*. at 666. The Minnesota Supreme Court held that the state's attempt to enforce the confidentiality promise violated the newspaper's First Amendment rights, but the U.S. Supreme Court reversed. *Id*. at 667. The Supreme Court recognized that the doctrine of promissory estoppel simply "requires those who make certain kinds of promises to keep them." *Id*. at 672. Such an application of promissory estoppel does not "offend the First Amendment." *Id*. at 669.

The same is true with respect to plaintiffs' voluntary agreements. As *Cohen* holds, the First Amendment is not a license for a party to an otherwise valid contract to renege on her promises—let alone to seek a refund of consideration already paid in exchange for benefits already received. *See Smith v. Super. Ct*., 2018 U.S. Dist. LEXIS 196089, at *2-3 (N.D. Cal. Nov. 16, 2018) (Chhabria, J.) (after specifically consenting to continuation of union dues deduction for full contractual period upon resignation from union, plaintiff "cannot now invoke the First Amendment to wriggle out of his contractual duties"). As the United States District Court for the Western District of Washington explained in another case challenging union

membership agreements:

> The freedom of speech and the freedom of association do not trump the obligations and promises voluntarily and knowingly assumed. The other party to that contract has every reason to depend on those promises for the purpose of planning and budgeting resources. The Constitution says nothing about reneging legal and lawful responsibilities freely undertaken.

*Fisk v. Inslee*, 2017 U.S. Dist. LEXIS 170910, at *5 (W.D. Wash. Oct. 16, 2017); *accord Belgau v. Inslee*, 2018 U.S. Dist. LEXIS 175543, at *14 (W.D. Wash. Oct. 11, 2018).[8]

Plaintiffs' voluntary contractual agreement to join Local 521 and pay union membership dues thus remains entirely enforceable under federal and state law. Indeed, plaintiffs present a much simpler case than was presented in many of the decisions discussed above, which involved parties seeking to escape *current* contractual obligations based on intervening changes in the law. Plaintiffs here seek retrospective relief from now-terminated contractual agreements under which the parties' contractual obligations have already been satisfied. There is no legal basis for awarding such relief.[9]

## C. PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY THE CALIFORNIA MEYERS-MILIAS-BROWN ACT.

Plaintiffs' state law claims for retrospective monetary relief fail for the separate reason

---

[8] Plaintiffs rely on *Janus* as a basis for asserting that their prior payment of membership dues violated their constitutional rights, but *Janus* considered only the First Amendment interests of individuals who have *not* chosen to join the union that serves as their collective bargaining representative. *See, e.g.*, *Janus*, 138 S.Ct. at 2486 ("Neither an agency fee nor any other payment to the union may be deducted from a *nonmember's* wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, *nonmembers* are waiving their First Amendment rights, and such a waiver cannot be presumed.) (emphases added) (internal citations omitted). The *Janus* Court's repeated assurances that the decision would not "require an extensive legislative response" further demonstrate that it does not affect the relationship between public-employee unions and their *members*. *See, e.g.*, *id.* at 2485 n.27 ("States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions."); *see also Belgau*, 2018 U.S. Dist. LEXIS 175543, at *13 ("*Janus* says nothing about people who joined a union, agree to pay dues, and then later change their minds about paying union dues.").

[9] Plaintiffs' § 1983 claim for recovery of membership dues they paid is also barred because the basis of that claim is the defendants' enforcement of pre-Janus fair share fees requirements for non-members. Defendants acted in good faith reliance on presumptively constitutional state law in collecting fair share fees, so they are not retrospectively liable under § 1983. *See infra* Part E.2.

that, under the MMBA, those claims fall within the exclusive jurisdiction of California's Public Employment Relations Board ("PERB").

As County employees, Plaintiffs' employment is governed by the MMBA. *See* Gov't Code §3501(c). The MMBA gives PERB exclusive jurisdiction to interpret and enforce the statute, subject to appeal to the California Courts of Appeal. That "exclusive jurisdiction" extends to both "[t]he initial determination as to whether [a] charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter," *id.* §3509(b), i.e., whether a violation of the MMBA has occurred and, if so, what remedy should be ordered.

PERB's exclusive jurisdiction ousts the courts' jurisdiction not only to adjudicate claims arising from conduct that is prohibited by (i.e., violates) the MMBA, but even to determine whether conduct is in fact prohibited by the MMBA, as long as it is *arguably* prohibited. PERB's authority similarly ousts the courts' jurisdiction to adjudicate claims arising from conduct that is protected or even *arguably* protected by the MMBA. *See, e.g.*, *El Rancho Unified School District v. National Education Ass'n*, 33 Cal.3d 946 (1983).[10] Under *El Rancho*'s preemption doctrine, it does not matter whether plaintiffs plead violations of one of the statutes administered by PERB (e.g., MMBA or EERA), on the one hand, or violations of other state statutes or the common law (as here and as in *El Rancho*). What matters is the nature of the underlying conduct, "however it is described in the complaint," *i.e.*, regardless of whatever labels (causes of action) plaintiffs affix to that conduct. *El Rancho*, 33 Cal.3d at 954 n.13. Moreover, under *El Rancho*, defendants need not demonstrate that the underlying conduct is actually prohibited or protected by one of the statutes, only that the issue is arguable. *Id.* at 953. And

---

[10] *El Rancho* was decided under similar provisions of the Educational Employment Relations Act ("EERA"), California Government Code §§3540-49.3, another statute that PERB administers and over which it has exclusive jurisdiction to enforce. Numerous judicial decisions have found rulings under the various statutes that PERB administers, including both EERA and MMBA, to be interchangeable due to similar language included in those statutes and the similarity in the principles underlying them. *See, e.g.*, *Redwoods Cmty. College Dist. v. PERB*, 159 Cal.App.3d 617, 623-24 (1984).

even if a violation of the statute is undisputed, PERB's exclusive jurisdiction to determine the appropriate remedy preempts the courts' jurisdiction. *Id.* at 958.

The California appellate courts have determined that challenges to fair share fees collection are preempted by PERB's exclusive jurisdiction. *See Link v. Antioch Unified School District*, 142 Cal.App.3d 765, 767-69 (1983); *Leek v. Washington Unified School District*, 124 Cal.App.3d 43, 51-54 (1981). Both *Link* and *Leek* were subsequently approved by the California Supreme Court in *San Jose Teachers Association v. Superior Court*, 38 Cal.3d 839, 863 (1985), *judgment vacated and remanded on other grounds sub nom Abernathy v. San Jose Teachers Ass'n*, 475 U.S. 1063 (1986). In doing so, the Court noted that PERB itself has confirmed that challenges to the collection of fair share fees "pose statutory questions within the agency's jurisdiction." *San Jose Teachers Ass'n*, 38 Cal.3d at 862 (citing *King City Joint Union High Sch. Dist.*, PERB Decision No. 197 (1982), and *Antioch Unified Sch. Dist. (David W. Link)*, PERB Decision No. IR-47 (1985)).[11] Thus, challenges to fair share fee collection fall within PERB's jurisdiction, and civil state law claims involving such challenges are preempted.

Plaintiffs' claims are preempted by the MMBA because the alleged conduct at issue—the collection of membership dues and pre-*Janus* fair share fees—is arguably protected by the MMBA, which contains several provisions expressly allowing the collection of membership dues and fair share fees. *See* Cal. Gov't Code §§ 3502.5(a), 3502.5(b), 3502.5(f), 3508.5. These provisions affirmatively protect defendants' right to collect agency fees against claims that might otherwise arise under Government Code sections 3502, 3506, and 3506.5, which protect and enforce the employees' "right to refuse to join or participate in the activities of employee organizations." *Id.* § 3502. Indeed, the California Supreme Court endorsed this construction of similar provisions of the EERA in *Cumero v. PERB*, 49 Cal.3d 575, 587 (1989) (holding that EERA's express provisions permitting the collection of fair share fees "prevail over the nonmembers' more generalized rights . . . to refuse to participate in the activities of employee organizations"). As *Cumero* reflects, this is PERB's understanding of the statutory scheme as

---

[11] PERB decisions are available at https://www.perb.ca.gov/decisionbank/.

well.  *See id.* at 583-84 (PERB had held that specific provisions authorizing fair share fees modify general provisions giving individuals the right to join or refuse to join a union).

Although Plaintiffs may contend that the MMBA cannot protect the mandatory collection of fair share fees because *Janus* held such fees unconstitutional, they cannot dispute that such fees had been deemed constitutional in *Abood*, which was not overruled until *Janus* was decided. To reach back to the time that the pre-*Janus* fees at issue in this lawsuit were collected, Plaintiffs must contend that *Janus* is retroactive for the purposes of both federal and state law, a contention that defendants deny.  Since the retroactivity of *Janus* has not yet been determined, however, the pre-*Janus* collection of fees is at least arguably protected by the MMBA, and plaintiffs' claims are preempted.

Even if *Janus* were determined to be retroactive as a matter of both state and federal law, plaintiffs' claims would still be preempted by the MMBA because the challenged conduct would then be arguably prohibited by that statute.  As noted above, Government Code sections 3502, 3506, and 3506.5 could be read to prohibit the collection of fair share fees absent the protection offered by sections 3502.5(a), 3502.5(b), 3502.5(f), 3508.5.  If *Janus* were retroactive and effectively nullified sections 3502.5(a), 3502.5(b), 3502.5(f), 3508.5, collecting fair share fees could arguably be deemed prohibited by sections 3502, 3506, and 3506.5, and, under section 3509(b), it would be within PERB's exclusive jurisdiction to determine both whether the collection of such fees violated the MMBA and, if so, what remedy should be ordered.  For example, PERB might determine that even if *Janus* is retroactive for all purposes, it would best "effectuate the purposes of [the MMBA]," Cal. Gov't Code § 3509(b), to accord an immunity from monetary liability to charged parties that acted in good faith reliance on the existing pre-*Janus* statutory and decisional law in collecting agency fees, analogous to that accorded under 42 U.S.C. §1983.  *See infra* Part E.2; *see also El Rancho*, 33 Cal.3d at 961 ("A court . . . cannot with expertise tailor its remedy to implement the broader objectives entrusted to PERB.  PERB, however, can, for [the statute] gives PERB discretion to withhold as well as to pursue, the various remedies at its disposal.") (internal quotations omitted).

In sum, the conduct challenged by plaintiffs is either arguably protected or arguably prohibited by the MMBA; plaintiffs' state law rights are established and governed by, and only by, the MMBA; and it is only before PERB that they can seek a remedy. Plaintiffs' state law claims are therefore preempted and must be dismissed.

**D. PLAINTIFFS' UCL CLAIM FAILS BECAUSE THE COLLECTION OF MEMBERSHIP DUES AND AGENCY FEES DOES NOT CONSTITUTE A "BUSINESS ACT OR PRACTICE" WITHIN THE MEANING OF BUSINESS & PROFESSIONS CODE SECTION 17200.**

Plaintiffs' fourth cause of action alleges violations of the California Unfair Competition Law by Local 521. *See* FAC ¶¶ 50-53. But as relevant here, that statute prohibits only "*business* act[s] or practice[s]" that are unlawful, unfair, or fraudulent. Bus. & Prof. Code § 17200 (emphasis added). Local 521 is a non-profit labor union, and providing collective bargaining representation to public employees is not a "business." Moreover, Local 521's challenged conduct—"collecting union dues, fair share service fees, and agency fees" from public employees through payroll deduction by the County pursuant to state law, FAC ¶ 51—does not constitute commercial activity and is not a "business act or practice." Accordingly, Local 521's conduct cannot be challenged as a violation of the UCL, and the fourth cause of action must be dismissed for that separate reason. *See Dinh Ton That v. Alders Maintenance Ass'n*, 206 Cal. App. 4th 1419, 1427 (2012) (explaining that "'[t]he UCL's purpose is to protect both consumers and competitors by promoting fair competition,'" and concluding that a homeowners' association that "does not participate as a business in the commercial market, much less compete in it," was not subject to UCL claim challenging voting rules) (quoting *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 949 (2012)); *see also Tecza v. Univ. of San Francisco*, 522 Fed. App'x 667, 668 (9th Cir. 2013) (University's disclosure of student's confidential information was not a "business practice" under UCL).

**E. PLAINTIFFS' CLAIMS FOR A REFUND OF FAIR SHARE FEES ARE TIME-BARRED AND FAIL ON THEIR MERITS.**

No plaintiff has paid fair share fees to Local 521 since January 2015. *See* Lee Decl. ¶3, Ex. B. Nonetheless, plaintiffs seek retrospective monetary relief requiring Local 521 to refund

all pre-*Janus* fair share fee payments. With the exception of plaintiffs' UCL claim (which fails for the separate reason just noted), however, plaintiffs' claims involving fair share fees fall outside the relevant statutes of limitations. Further, any fair share fees-based claim for monetary liability under §1983 fails for the independent reason that pre-*Janus* agency fees were collected in good faith reliance on state law and controlling Supreme Court precedent. And any fair share fees-based claims under California state law fail because those claims, in addition to being preempted by the MMBA, are barred by recently enacted California legislation (which similarly bars plaintiffs' state law claims for a refund of pre-*Janus* membership dues).

### 1. Plaintiffs' Fair Share Fees-Related Claims Are Time-Barred.

The undisputed record establishes that the only plaintiff who paid fair share fees to Local 521 during any relevant statutory period was Bermudez, and that he last did so in January 2015. *See* Lee Decl. ¶¶3, 4, Exs. B, C; *see also* Niebla Decl. ¶4. Because Bermudez filed his complaint in July 2018, Dkt. #1, he can only pursue fair share fees-related claims for which the relevant statute of limitations is at least 3.5 years.

Plaintiffs' first three causes of action are all subject to shorter statutes of limitations. The statute of limitations for claims pursued under 42 U.S.C. §1983 in California is two years. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir. 1991); *Lagana v. Democratic Party*, 2013 U.S. Dist. LEXIS 12743, at *5 (N.D. Cal. Jan. 30, 2013); *see also* Cal. Code Civ. Proc. § 335.1. The statute of limitations for conversion in California is three years from the date of the wrongful taking. Cal. Code Civ. Proc. §338(c); *see also Strasberg v. Odyssey Group*, 51 Cal.App.4th 906, 915 (1996). The same three-year limitation period applies to plaintiffs' claim for restitution. *See Bell v. Bank of California*, 153 Cal. 234, 242-43 (1908) (holding that C.C.P §338(c) "is applicable to all cases of 'unlawful taking or detaining personal property,' whatever the form of action"); *Lowe v. Ozman*, 137 Cal. 257, 259-60 (1902); *see also Maguire v. Hibernia S. & L. Soc.*, 23 Cal.2d 719, 733 (1944).

Accordingly, plaintiffs' first three causes of action are time-barred to the extent they seek

retrospective monetary relief regarding pre-*Janus* fair share fees payments.

> **2.** **Pre-*Janus* Fair Share Fees Were Collected in Good Faith Reliance on State Law and Controlling Supreme Court Precedent.**

In addition to being time-barred, plaintiffs' claim for a refund of pre-*Janus* fair share fees under 42 U.S.C. §1983 fails for the separate reason that Local 521 relied upon California law and controlling Supreme Court precedent in requesting and accepting those fees.[12]

Section 1983 provides a cause of action for the deprivation of an individual's "rights, privileges, or immunities secured by the Constitution and laws" under color of state law. 42 U.S.C. §1983. Private parties may also be sued under § 1983 if they are acting under color of state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). In *Wyatt v. Cole*, 504 U.S. 158 (1992), the Supreme Court held that private parties cannot invoke the same doctrine of "qualified immunity" available to public officials facing §1983 liability. Nonetheless, every member of the *Wyatt* Court concluded that some defense to monetary liability, whether qualified immunity or a good faith defense, should be available to private parties sued under § 1983. On the basis of these opinions, the Fifth Circuit, on remand from issuance of the Supreme Court's *Wyatt* decision, squarely held "that private defendants sued on the basis of *Lugar* may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures . . . ." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993). Since *Wyatt*, this holding has been adopted by every Court of Appeals to address this issue, including the Ninth Circuit. *See Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008); *Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 698-99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d Cir. 1994).

Here, plaintiffs' claims for monetary relief based on pre-*Janus* fair share fee payments fail because Local 521 acted in reliance on state law and then-binding Supreme Court precedent.

---

[12] Local 521 addresses this issue in greater depth in its motion to dismiss the related case *Hough v. SEIU Local 521*, No. 18-cv-04902-VC, which, at this Court's request, is set to be argued on the same date as this Motion for Summary Judgment.

In particular, Local 521 relied upon California Government Code §3502.5, which stated that "an agency shop agreement may be negotiated between a public agency and a recognized public employee organization that has been recognized as the exclusive or majority bargaining agent," and defines an "agency shop" as "an arrangement that requires an employee, as a condition of continued employment, either to join the recognized employee organization or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization." *Id.* Prior to June 27, 2018, §3502.5 was indisputably constitutional under the Supreme Court's then-binding precedent of *Abood*, which had rejected a First Amendment challenge to public employees' compelled payment of fair share fees to support the collective bargaining activities of their exclusive representative.

Although *Janus* overturned *Abood* and held that public employees may no longer be compelled to pay such fees, until *Janus* was decided Local 521 was entitled to rely upon *Abood* and Government Code §3502.5 without risking substantial liability under 42 U.S.C. §1983. As the Supreme Court has emphasized, "state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Lemon v. Kurtzman*, 411 U.S. 192, 209 (1973); *see also Wyatt*, 504 U.S. at 174 (Kennedy, J., concurring) ("[A] private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law."); *Pinsky*, 79 F.3d at 313 ("[I]t is objectively reasonable to act on the basis of a statute not yet held invalid."). Accordingly, as numerous courts have recognized—including in the context of lawsuits seeking a refund of pre-*Janus* fair share fees—unions that relied upon presumptively valid state laws and then-binding Supreme Court precedent in requesting and accepting fair share fees have a complete good faith defense provides to claims for retrospective monetary relief under §1983. *See Danielson v. AFSCME Council 28*, No. 3:18-cv-05206-RJB (W.D. Wash. Nov. 28, 2018) (RJN Ex. 2) (applying good faith defense to §1983 claim for refund of pre-*Janus* fair share fees); *Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) (applying good faith defense to §1983 claim for refund of fair share fees received prior to *Harris*

*v. Quinn*, 134 S.Ct. 2618 (2014)); *Winner v. Rauner*, No. 15 CV 7213, 2016 U.S. Dist. LEXIS 175925, at *12-16 (N.D. Ill. Dec. 20, 2016) (same); *Hoffman v. Inslee*, No. C14-200-MJP, 2016 U.S. Dist. LEXIS 146276, at *11-12 (W.D. Wash. Oct. 20, 2016) (same).

### 3. <u>Plaintiffs' state law claims are precluded by California Government Code Section 1159.</u>

Finally, all of plaintiffs' state law claims are also foreclosed by California Government Code §1159, which provides:

> (a) The Controller, a public employer, an employee organization, or any of their employees or agents, shall not be liable for, and shall have a complete defense to, any claims or actions under the law of this state for requiring, deducting, receiving, or retaining agency or fair share fees from public employees, and current or former public employees shall not have standing to pursue these claims or actions, if the fees were permitted at the time under the laws of this state then in force and paid, through payroll deduction or otherwise, prior to June 27, 2018.

> (b) This section shall apply to claims and actions pending on its effective date, as well as to claims and actions filed on or after that date.

Cal. Gov't Code §1159. Pursuant to that provision, the County (which is a "public employer") and Local 521 (which is an "employee organization") cannot be liable under California law for requiring, receiving, or retaining pre-*Janus* fair share fees, and they have a "complete defense" to such claims.

Section §1159(a) not only bars state law claims for recovery of fair share fees but also plaintiffs' claims for recovery of membership dues collected pursuant to valid union membership agreements prior to *Janus*, because the basis of that claim is that the unions were "requiring" non-members to pay fair share fees. Moreover, §1159(a) demonstrates that, for the purposes of plaintiffs' three state law causes of action, Local 521's receipt of pre-*Janus* membership dues cannot be deemed wrongful, unlawful, or unfair solely because of the fair share fee requirement—which is a necessary element of each of those claims.[13]

Accordingly, plaintiffs' state law claims are all precluded by §1159(a).

---

[13] A contrary interpretation of §1159 would lead to the absurd result that public employers and unions are protected from state law claims for fair share fees paid without consent—a practice the Supreme Court has now declared unconstitutional—while those entities would *not* be protected from claims involving membership dues that employees voluntarily elected to pay.

## IV.    CONCLUSION

For the foregoing reasons, judgment should be entered for defendants on all of plaintiffs'
claims.

Dated:  December 5, 2018

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

_/s/ Caren P. Sencer_

By:       CAREN P. SENCER
          KERIANNE R. STEELE
          ERIC WIESNER

Attorneys for Defendant SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 521


ALTSHULER BERZON LLP

_/s/ P. Casey Pitts_

Dated:  December 5, 2018         By:       SCOTT A. KRONLAND
                                           JEFFREY B. DEMAIN
                                           P. CASEY PITTS

Attorneys for Defendant SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 521


OFFICE OF THE COUNTY COUNSEL

_/s/ Nancy J. Clark_

Dated:  December 5, 2018         By:       NANCY J. CLARK

Attorneys for Defendant
COUNTY OF SANTA CLARA


145529\999284

## CERTIFICATE OF SERVICE

I am a citizen of the United States and an employee in the County of Alameda, State of California. I am over the age of eighteen years and not a party to the within action; my business address is1001 Marina Village Parkway, Suite 200, Alameda, California 94501.

I hereby certify that on December 5, 2018, I electronically filed the forgoing **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** with the UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION, by using the Court's CM/ECF system.

I certify under penalty of perjury that the above is true and correct. Executed at Alameda, California, on December 5, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Notice of Electronic Filing by CM/ECF system.

Katrina Shaw