CAREN P. SENCER, Bar No. 233488
KERIANNE R. STEELE, Bar No. 250897
ERIC WIESNER, Bar No. 259672
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone (510) 337-1001
Fax (510) 337-1023
E-Mail: courtnotices@unioncounsel.net
csencer@unioncounsel.net
ksteele@unioncounsel.net
ewiesner@unioncounsel.net

SCOTT A. KRONLAND, Bar No. 171693
JEFFREY B. DEMAIN, Bar No. 126715
P. CASEY PITTS, Bar No. 262463
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-Mail: skronland@altshulerberzon.com
jdemain@altshulerberzon.com
cpitts@altshulerberzon.com

Attorneys for Defendant SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521

***Additional Counsel for additional Defendant listed on following page***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JORGE BERMUDEZ, et al.,<br><br>Plaintiffs,<br><br>and<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521, and COUNTY OF SANTA CLARA,<br><br>Defendants. | No. 3:18-cv-04312-VC<br><br>**STATEMENT OF RECENT DECISION**<br><br>Date: March 14, 2019<br>Time: 10:00 AM<br>Courtroom: 04<br>Judge: Vince Chhabria |

JAMES R. WILLIAMS (S.B.#271253)
NANCY J. CLARK (S.B. #157839)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
Email: Nancy.Clark@cco.sccgov.org

Attorneys for Defendant
COUNTY OF SANTA CLARA

Pursuant to Civil Local Rule 7-3(d)(2), defendants hereby bring to the Court's attention a relevant judicial decision issued after the filing of defendants' reply in support of their motion for summary judgment, Docket No. 57. The new decision, a true and correct copy of which is attached hereto as Exhibit A, is an Order on Cross Motions for Summary Judgment, issued on February 15, 2019, by the U.S. District Court for the Western District of Washington in *Belgau v. Inslee*, Case No. 18-5620 RJB, Docket No. 57, ___ F.3d ___, 2019 WL 652362 (W.D. Wash. Feb. 15, 2019).

Dated: February 20, 2019

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By: *\/s/ Caren P. Sencer*
CAREN P. SENCER
KERIANNE R. STEELE
ERIC WIESNER

Attorneys for Defendant SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521

ALTSHULER BERZON LLP

Dated: February 20, 2019

By: */s/ Scott A. Kronland*
SCOTT A. KRONLAND
JEFFREY B. DEMAIN
P. CASEY PITTS

Attorneys for Defendant SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521

OFFICE OF THE COUNTY COUNSEL

Dated: February 20, 2019

By: */s/ Nancy J. Clark*
NANCY J. CLARK

Attorneys for Defendant COUNTY OF SANTA CLARA

**Signature Attestation**

Pursuant to Local Civil Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the above signatories.

Dated: February 20, 2019.

Altshuler Berzon LLP

By: */s/Scott A. Kronland*
Scott A. Kronland

# EXHIBIT A

2019 WL 652362

Editor's Note: Additions are indicated by Text and deletions by ~~Text~~ .

Only the Westlaw citation is currently available.
United States District Court, W.D. Washington.

MELISSA BELGAU, DONNA BYBEE, RICHARD OSTRANDER, KATHRINE NEWMAN, MIRIAN TORRES, GARY HONC, and MICHAEL STONE, Plaintiffs,
v.
JAY INSLEE, in his official capacity as governor of the State of Washington, DAVID SCHUMACHER, in his official capacity as Director of the Washington Office of Financial Management, JOHN WEISMAN, in his official capacity as Director of the Washington Department of Health, CHERYL STRANGE, in her official capacity as Director of the Washington Department of Social and Health Services, ROGER MILLAR, in his official capacity as Director of the Washington Department of Transportation, JOEL SACKS, in his official capacity as Director of the Washington Department of Labor and Industries, and WASHINGTON FEDERATION OF STATE EMPLOYEES (AFSCME, COUNSEL 28) a labor corporation, Defendants.

CASE NO. 18-5620 RJB
|
02/15/2019

~~ROBERT J. BRYAN,~~ United States District Judge

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

***1** THIS MATTER comes before the Court on the Defendants Governor Jay Inslee, Director David Schumacher. Secretary John Wiesman, Secretary Cheryl Strange, Secretary Roger Millar, and Director Joel Sacks' ("State Defendants") Motion for Summary Judgment (Dkt. 47), Defendant Washington Federation of State Employees, AFSCME Council 28's ("Union") Motion for Summary Judgment (Dkt. 46), and the Plaintiffs Melissa Belgau, Donna Bybee, Michael Stone, Righard Ostrander, Miriam Torres, Katherine Newman, and Gary Honc's Cross-Motion for Summary Judgment (Dkt. 48). The Court has considered the pleadings filed regarding the motions and the remaining file.

Plaintiffs, who are Washington State employees, filed this putative class action on August 2, 2018, asserting that the Defendants are violating their first amendment rights by deducting union dues/fees from their wages even "after the U.S. Supreme Court issued *Janus v. AFSCME, Council 31*, on June 27, 2018, despite the fact that Plaintiffs have not clearly and affirmatively consented to the deductions by waiving the constitutional right to not fund union advocacy." Dkt. 1 (*citing Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018)).

For the reasons provided below, the State and Union's motions for summary judgment (Dkts. 46 and 47) should be granted and the Plaintiffs' motion (Dkt. 48) should be denied.

## I. FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND FACTS

The State and the Union entered an exclusive collective bargaining agreement for the years 2017-2019 ("CBA") which included the collection of agency fees for non-union members. Dkts. 44, at 2 and 44-1, at 2. Upon the Union member's written authorization, the State is obligated by statute to "deducting from the payments to bargaining unit members the dues required for membership in the [Union]." RCW § 41.80.100 (3)(b)(i).

The Union represents more than 40,000 Washington State employees; over 35,000 are dues paying members. Dkt. 44, at 2. Each Plaintiff is a "Washington state employee working in a General Government bargaining unit of employees that is exclusively represented by the [Union] for purposes of collective bargaining." Dkt. 44, at 2. They became Union members before July 2017. Dkts. 44-4 to 44-10. State employees are not required to become Union members as a condition of employment. Dkt. 44, at 3. Union members may resign their membership at any time. Dkt. 44, at 3.

In July 2017, the Union decided to begin using a new membership agreement which included a one-year dues payment commitment ("2017 membership agreement" or

"2017 agreement"). Dkt. 44, at 3. Members of the Union were asked, but not required, to sign the 2017 agreement. *Id*. The request was make "after a deliberative process by [the Union's] democratically elected Executive Board, which formally approved the new cards in a meeting open to [Union] members." *Id*. Union members did not have to sign the new cards to remain Union members; initial cards are considered effective. *Id.*

The 2017 membership agreement, entitled "Payroll Deduction Authorization & Maintenance of Membership Card," provided, in part:

> ***2** Yes! I stand united with my fellow State employees...100% Union...Yes! I want to be a union member...
>
> Effective immediately, I hereby voluntarily authorize and direct my Employer to deduct from my pay each period, the amount of dues as set in accordance with the [Union] Constitution and By-Laws and authorize my Employer to remit such amount semi-monthly to the Union (currently 1.5% of my salary per pay period not to exceed the maximum). This voluntary authorization and assignment shall be irrevocable for a period of one year from the date of execution or until the termination date of the collective bargaining agreement (if there is one) between the Employer and the Union, whichever occurs sooner, and for year to year thereafter unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period, regardless of whether I am or remain a member of the Union, unless I am no longer in active pay status in a [Union] bargaining unit; provided however, if the applicable collective-bargaining agreement specifies a longer or different revocation period, then only that period shall apply. This card supersedes any prior check-off authorization card I signed. I recognize that my authorization of dues deductions, and the continuation of such authorization from one year to the next, is voluntary and not a condition of my employment.

Dkts. 44-11 to 44-17. Each of the Plaintiffs signed the 2017 membership agreement: Plaintiff Belgau on November 2, 2017; Plaintiff Ostrander on November 2, 2018; Plaintiff Bybee on November 7, 2017; Plaintiff Stone on March 6, 2018; Plaintiff Newman on March 21, 2018; Plaintiff Honc on April 14, 2018; and Plaintiff Torres on April 16, 2018. *Id*. Each were afforded the opportunity to opt-out of Union membership, but did not choose to do so. *Id.*

The Defendants did not prevent, or advise, the Plaintiffs to seek legal counsel before they signed the original or 2017 membership agreements. Dkt. 44, at 3. The Plaintiffs did not seek legal counsel before signing the agreements. *Id.*

At the time the Plaintiffs signed their original and 2017 agreements, "the representation fee applicable to non-members ranged from approximately 65.3% to 78.8% of Union dues paid by Union members." Dkt. 44, at 4. Union dues were calculated "between approximately 1.37% and 1.5% of union members' base wages." *Id.*

Members of the Union are accorded exclusive rights, including "the ability to vote on whether to ratify a collective bargaining agreement, vote in Union officer elections, run for Union office, have the opportunity to serve on bargaining committees, and participate in the Union's internal affairs." Dkt. 44, at 4. They are also given members-only benefits, including "discounts on goods and services, including home mortgages and wireless phone plans, access to scholarship programs, free legal advice, discounted dental benefits, annual family campouts, access to the Union Sportsman's Alliance, and access to the AFSCME Free College program." *Id.*, at 5. They are also eligible to apply for disaster/hardship relief grants through the Foundation for Working Families. *Id.*

***3** On June 27, 2018, the United States Supreme Court decided *Janus v. AFSCME, Council 31*. 138 S. Ct. 2448, 2486 (2018). The State and the Union entered into a Memorandum of Understanding on July 6, 2018, and amended the CBA to stop collection of compulsory agency fees for non-union members. Dkt. 44, at 2. As amended in July of 2018, § 40.2 of the CBA provides:

> The Employer agrees to deduct an amount equal to the membership dues from the salary of employees who request such deduction in writing within thirty (30) days of receipt of a properly completed request submitted to the appropriate agency payroll office. Such requests will be made on a Union payroll deduction authorization card. The

> Employer will honor the terms and conditions of each employee's signed membership card.

Dkt. 44-3, at 2. Under amended § 40.3(A), the CBA states that "[u]pon receipt of the employee's written authorization, the Employer [the State of Washington here] will deduct from the employee's salary an amount equal to the dues required to be a member of the Union." *Id.,* at 3. In amended § 40.6, the CBA further provides that "[a]n employee may revoke his or her authorization for payroll deduction of payments to the Union by written notice to the Employer and the Union in accordance with the terms and conditions of their signed membership card." *Id.,* at 7. Article 40 of the amended 2017-2019 CBA applies to the Plaintiffs and around 26,800 other Washington state employees. Dkt. 44, at 2.

After the June 27, 2018 *Janus* decision, each of the Plaintiffs notified the Union and the State that they no longer wanted to be Union members. Dkt. 44, at 5. Plaintiffs are no longer Union members and do not have membership rights or access to Union benefits. *Id.* The State continued/continues to deduct an amount equal to the dues from their pay checks pursuant to the terms in the Plaintiffs' 2017 membership agreements and remitted/remits them to the Union. *Id.* For Plaintiffs Belgau, Bybee, and Ostrander, the one-year term expired in November 2018, so the State stopped deducting an amount equal to Union dues from their wages at that time. *Id.* When the one year anniversary of the signing of their 2017 membership agreement lapses for the remaining Plaintiffs, the last will be in April of 2019, the State will end the deductions without further objection from the Plaintiffs. *Id.*

After the Plaintiffs filed this case, the Union agreed to deposit, into a separate interest-bearing escrow account, all dues that the Union received from each Plaintiff after the date of each Plaintiff's request to resign from Union membership. Dkt. 44, at 6. The Union will continue to do so until this case is resolved, and will not use the dues to pay for any Union activities or otherwise subsidize Union operations. *Id.*

**B. PROCEDURAL HISTORY**

On August 2, 2018, the Plaintiffs filed this putative class action (1) challenging the constitutionality of RCW 41.80.100 and the CBA provisions related to the deduction of membership fees, as a violation of their First Amendment rights, (2) asserting that the Defendants conspired to violate their constitutional rights, and (3) claiming that the Union was unjustly enriched. Dkt. 1. The Plaintiffs seek declaratory and injunctive relief as well as monetary damages, costs and attorneys' fees. *Id.*

***4** The same day Plaintiffs filed their complaint, they filed a motion seeking a temporary restraining order "enjoining Defendants from deducting union dues/fees from the wages of any Washington State employee in a bargaining unit listed in Appendix A to the 2017-2019 [Collective Bargaining Agreement ("CBA") ] for whom Defendants cannot provide clear and compelling evidence that he or she clearly and affirmatively consented, on or after June 27, 2018, to the deduction of union dues by waiving his or her right to not fund union advocacy, and from preventing Plaintiffs and state employees from resigning union membership." Dkt. 2, at 2.

On August 8, 2018, Plaintiffs' motion for a temporary restraining order was denied without prejudice. Dkt. 11. The Plaintiffs renewed their motion to preliminarily enjoin the State from continuing to collect Union membership dues because they had resigned from the Union. Dkt. 33. That motion was denied on October 11, 2018. Dkt. 37. It relied, in part, on the reasoning in *Fisk v. Inslee,* 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017). *Id.* After that Order from this Court was issued, *Fisk* was affirmed on appeal in an unpublished decision. *Fisk v. Inslee*, 17-35957, 2019 WL 141253 (9th Cir. Jan. 9, 2019). The Ninth Circuit held:

> Appellees' deduction of union dues in accordance with the membership cards' dues irrevocability provision does not violate Appellants' First Amendment rights. Although Appellants resigned their membership in the union and objected to providing continued financial support, the First Amendment does not preclude the enforcement of "legal obligations" that are bargained-for and "self-imposed" under state contract law.

> *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668-71, 111 S. Ct. 2513, 115 L.Ed.2d 586 (1991). The provisions authorizing the withholding of dues and making that authorization irrevocable for certain periods were in clear, readable type on a simple one-page form, well within the ken of unrepresented or lay parties. Moreover, temporarily irrevocable payment authorizations are common and enforceable in many consumer contracts—e.g., gym memberships or cell phone contracts—and we conclude that under state contract law those provisions should be similarly enforceable here.

*Id.*, at 1. In *Fiske*, the Plaintiffs raised the issue of whether they had properly waived their First Amendment rights for the first time; the Ninth Circuit declined to reach the question. *Id.*

### C. PENDING MOTIONS AND ORGANIZATION OF OPINION

The parties now file cross motions for summary judgment (Dkts. 46-48) and have filed a "Stipulation Regarding Facts for Cross Motions for Summary Judgment" (Dkt. 44), which they assert contain the facts necessary to decide the motions. Responses have been filed (Dkts. 52-54), as have replies (Dkts. 55 and 56).

This opinion will first consider the State Defendants' motion for summary judgment for dismissal of all Plaintiffs' claims against the State Defendants for retrospective relief, on claims asserted against them under state law, based on the Eleventh Amendment, and the State Defendants' motion to dismiss the claim for declaratory judgment as to the Washington Attorney General, who is not a party to this case. *Id.* This opinion will then turn to the parties' cross motions for summary judgment on the First Amendment claims and the remaining state law claim – unjust enrichment.

## II. DISCUSSION

### A. STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

***5** The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. ELEVENTH AMENDMENT AND NON-PROSPECTIVE RELIEF SOUGHT AGAINST THE STATE DEFENDANTS**

The Plaintiffs make claims against the State and against individual state officials, in their official capacities only, for retrospective and prospective relief for the alleged constitutional violations and under state law. Dkt. 1. Claims against state or county officials, in their official capacities, are considered claims against the state. *Will v. Michigan Dept. of State Police*, 491 U.S. 48 (1989).

*1. Claims for Federal Constitutional Violations that Seek Non-Prospective Relief Against the State and the Individual State Officials*

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). States (or state officers acting in their official capacity) are not "persons" for purposes of damages for § 1983 liability. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66 (1989); *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir. 1997). "However, there is one exception to this general rule: when sued for *prospective injunctive* relief, a state official in his official capacity is considered a 'person' for § 1983 purposes." *Doe*, at 839 (*emphasis in original*).

To the extent that the Plaintiffs' assert constitutional claims under 42 U.S.C. § 1983 against the State Defendants for which they seek damages, or any other relief aside from prospective relief, those claims should be dismissed. The only relief available to the Plaintiffs from the State Defendants is prospective relief for the alleged constitutional violations. The State Defendants' motion for summary judgment on all Plaintiffs' claims for which they seek non-prospective relief should be granted.

*2. Claims Other than State Claims asserted Against the State and State Officers in their Official Capacities*

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "The Eleventh Amendment has been authoritatively construed to deprive federal courts of jurisdiction over suits by private parties against unconsenting States" *Seven Up Pete Venture v. Schweitzer,* 523 F.3d 948, 953 (9th Cir. 2008), unless the private parties are seeking prospective relief for constitutional violations, *Ex Parte Young,* 209 U.S. 123 (1908).

To the extent the Plaintiffs' make claims other than claims for prospective relief for constitutional violations against the State Defendants, those claims should be dismissed. The State Defendants have not waived their Eleventh Amendment immunity as to those claims. The State Defendants' motion to have those claims dismissed as barred by the Eleventh Amendment should be granted. The Plaintiffs' motion for summary judgment on claims asserted against the State Defendants, except for the First Amendment claim which seeks prospective relief, should be denied.

**C. CLAIMS FOR DECLARATORY RELIEF AGAINST NON-PARTY WASHINGTON ATTORNEY GENERAL**

***6** The Plaintiffs seek "Declaratory Judgment that the Washington [Attorney General's] policy related to the application of *Janus* ...to [Union] represented State employees...is unconstitutional and of no effect." Dkt. 21, at 18.

Under Article III, a federal court cannot consider the merits of a legal claim unless the person seeking to invoke the jurisdiction of the court establishes the requisite standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149 (1990). A litigant demonstrates standing by showing that he or she has suffered an injury in fact that is fairly traceable to the challenged action and is redressable by a favorable judicial decision. *Steel Company v. Citizens for a Better Environment*, 118 S.Ct. 1003, 1017 (1998).

The State Defendants' motion for summary judgment of this claim should be granted. The Plaintiffs have failed to name the Washington Attorney General in this lawsuit. They failed to show that they suffered an injury in fact as

a result of an advisory opinion given by the Washington Attorney General. They make no showing that an alleged injury would be addressed by the relief they seek. The claim should be dismissed.

**D. CLAIMS FOR VIOLATION OF THE FIRST AMENDMENT**

The Plaintiffs assert claims against the Union and the State Defendants for violation of their First Amendment rights pursuant to 42 U.S.C. § 1983.

1. *First Amendment Claims Against the Union – State Action?*

As stated above, in order to maintain a claim under § 1983, a Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). "The state-action element in § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)(*internal quotation marks and citations omitted*). "[C]onstitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013).

A two-prong framework is used "for analyzing when governmental involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which the plaintiff complains." *Naoko,* at 994. The first prong considers "whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* "The second prong determines whether the party charged with the deprivation could be described in all fairness as a state actor." *Id.*

a. Whether the Claimed Deprivation Resulted from the Exercise of Some Right or Privilege or by a Rule of Conduct Imposed by the State

The claimed deprivation did not result in the exercise of some right or privilege or by a rule of conduct imposed by the State. Plaintiffs now acknowledge that the First Amendment does not bar the State's deduction of Union fees from a valid dues agreement. Dkt. 56. They dispute whether the agreements they signed are valid. Plaintiffs repeatedly assert that they are harmed because the agreements were insufficient-whether because they did not properly waived their constitutional rights, or the agreements were not supported by consideration, or were obtained by duress because they were given "alternative perils" (either sign the agreement or pay the now unconstitutional agency fee agreements or be fired), etc. The Plaintiffs fail to show that the contents of the agreements are in any way attributable to the State. The parties agree that the State Defendants did not play any role in drafting or in the formation of the agreements here. They agree that the Union, a private entity, drafted the agreements and asked the Plaintiffs to sign them. RCW 41.80.100 and the Article 40 of the amended CBA are silent on what terms and conditions are in the agreements. Indeed, state law prohibits the State from interfering in the formation or administration of the Union. RCW 41.80.110(1)(b). While the Plaintiffs attempt to recast their claim and argue that it is the State deductions that are issue, at the same time, they acknowledge that the deductions are constitutional if the agreements are valid. At its core, then, the source of the alleged constitutional harm is the sufficiency of the agreements, not the procedure for their collection that the State agreed to follow. "The claimed constitutional deprivation cannot be traced to a right, privilege, or rule of conduct imposed by a governmental entity." *Naoko,* at 994. This prong is not met.

b. Whether the Party Charged with the Deprivation is a State Actor

***7** Even if the first prong is met, the Plaintiffs have failed to show that the Union is a state actor. The "inquiry begins by identifying the specific conduct of which the plaintiff complains... because an entity may be a State actor for some purposes but not for others." *Caviness,* at 812-813 (*internal citations omitted*).

The Plaintiffs assert that their First Amendment rights were violated when the Union offered, and the Plaintiffs accepted, the initial membership agreement and the 2017

dues authorization agreement (that contains the one year non-revocable dues paying provision), both of which failed to contain a valid waiver of their constitutional rights or were otherwise invalid, and the State Defendants still deducted the Union dues. To maintain a federal constitutional claim, the issue is whether the Union's actions amount to state action.

"The Supreme Court has articulated four tests for determining whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Naoko,* at 995 (*internal quotation marks and citations omitted*). Each will be considered below.

(i) Public Function

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (*internal quotation marks omitted*).

There is no showing that the Union was endowed by the State "with powers or functions governmental in nature." *Florer,* at 924. The evidence in the record is that the Union was functioning as a union. The statute challenged by the Plaintiffs, RCW 41.80.110, and Article 40 of the CBA do not vest the Union with authority reserved to the government. Because "[t]he public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental," and no such showing has been made here, the public function test is not met. *Id.*

(ii) Joint Action

" 'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." *Naoko,* at 996 (*internal quotation marks and citations omitted*).

There is no showing that joint action exists here – that "state officials and private parties have acted in concert" to deprive the Plaintiffs of their constitutional rights. *Naoko,* at 996. There is no evidence that the State Defendants "affirm[ ], authorize[ ], encourage[ ], or facilitate[ ]" the contents of the agreements or have so "far insinuated [themselves] into a position of interdependence with the [Union] that it must be recognized as a joint participant in the challenged activity." *Naoko,* at 996. The State Defendants are prohibited from playing a role in the content of the agreements between the Plaintiffs and the Union. Even if the State Defendants approved of the contents of the agreements, of which there is no evidence, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Caviness*, at 817. The State Defendants' "mandatory indifference to the underlying merits," content, or validity of the agreements "refutes any characterization" by the Plaintiffs of a joint action between the State Defendants and the Union as to the "aspects of the [agreements] alleged to compromise" the Plaintiffs' First Amendment rights. *Naoko,* at 997. The Plaintiffs argue that they seek recovery, not only for the continued deduction of dues after *Janus* (and their notification that they no longer wished to be Union members), but also seek recovery for deductions of compelled agency fees before *Janus* was decided, which was authorized by a Washington statute at the time. The Plaintiffs make no showing that *Janus* should be given retroactive effect in a manner that would allow them to bootstrap such a claim. *Janus* specifically stated that its holding was limited, providing that, "States can keep their labor-relations systems exactly as they are – only they cannot force **nonmembers** to subsidize public-sector unions." *Janus,* at 2485, n. 27 (*emphasis added*).

***8** While the Plaintiffs assert that it is RCW 41.80.100 that is the source of the Union's authority to impose a fee on nonmembers (Dkt. 56, at 15), that argument is without merit. It is the agreements themselves that authorize the Union to collect dues in exchange for benefits. Even in the absence of RCW 41.80.100 or Article 40 of the CBA, the Union could attempt to enforce the agreements to pay dues independently, in a breach of contract action. RCW 41.80.100 and Article 40 of the CBA only require the State Defendants to perform an administrative task - after the Plaintiffs provided express written authorization for dues to be paid for a year, the State Defendants are to deduct those dues and send them to the Union. The State points out that it does this for other entities with periods

of payment that are not revocable for a set period of time, like for the retirement plan and health plan. Dkt. 47, at 17. Moreover, there is no evidence that the State Defendants "in any meaningful way accept[ ] benefits derived from the allegedly unconstitutional actions." *Naoko,* at 997. There is no evidence in the record that the substance of the agreements are the product of joint action with Union and the State Defendants.

(iii) State Compulsion

Under the state compulsion test, "[a] state may be responsible for a private entity's actions if it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Caviness,* at 816.

There is no evidence in this case that the State Defendants have "exercised coercive power" over the Union in regard to the agreements at issue. *Caviness,* at 816. The agreements at issue were made by private parties without standards established by the state. Further, there is no evidence that the State has provided significant "overt or covert" encouragement that the actions alleged to be unconstitutional here must "be deemed to be that of the State." *Id.* The requirements for the state compulsion test are not met.

(vi) Government Nexus

"Under the governmental nexus test, a private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Naoko,* at 996, n.13.

This test is not met. There is no evidence that there is a "sufficiently close nexus between the State" and the content and or validity of the agreements "so that the action of the latter may be fairly treated as that of the State itself." The agreements at issue are between private parties.

c. Conclusion on State Action

The Plaintiffs' motion for summary judgment as to their First Amendment claim against the Union should be denied and the Union's motion for summary judgment should be granted. There is no evidence that the claimed constitutional deprivation here resulted from "the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Naoko,* at 996. There is no evidence that the Union "could be described in all fairness as a state actor," *Id.,* under any of the four tests. The State Defendants' obligation to deduct fees in accordance with the authorization "agreements does not transform decisions about membership requirements [that they pay dues for a year] into state action." *See Bain v. California Teachers Ass'n,* 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016). The First Amendment claim against the Union should be dismissed. Because the Plaintiffs' constitutional claim fails at the state action stage, no decision is necessary on whether the initial or 2017 membership agreements violate the First Amendment. *Naoko,* at 1000.

2. *First Amendment Claim Asserted Against the State Defendants*

As above, all Plaintiffs' claims for relief against the State Defendants are dismissed because States are not "a person" under § 1983 and by operation of the Eleventh Amendment, except claims under § 1983 which seek prospective relief. The Plaintiffs First Amendment claims against the State Defendants, then relate only to RCW 41.80.100, as amended, and Article 40 of the amended CBA, which are currently in effect, and only for prospective relief.

***9** The Plaintiffs assert that RCW 41.80.100 and the CBA compel the State to "deduct union dues/fees from the Plaintiffs'...wages even though they have not clearly and affirmatively consented to the deductions" and so violate the First Amendment.

The Plaintiffs' motion for summary judgment against the State Defendants for violation of their First Amendment rights should be denied and the State Defendants' motion for summary judgment should be granted. RCW 41.80.100 provides that upon the Plaintiffs' written authorization, the State is obligated to "deduct[ ] from the payments to bargaining unit members the dues required for membership in the [Union]." RCW § 41.80.100 (3)(b)(i). Likewise, as amended in July of 2018, § 40.2 of the CBA provides:

> The Employer agrees to deduct an amount equal to the membership dues from the salary of employees who request such deduction in writing within thirty (30) days of receipt of a properly completed request submitted to the appropriate agency payroll office. Such requests will be made on a Union payroll deduction authorization card. The Employer will honor the terms and conditions of each employee's signed membership card.

Dkt. 44-3, at 2. Under amended § 40.3(A), the CBA states that "[u]pon receipt of the employee's written authorization, the Employer [the State of Washington here] will deduct from the employee's salary an amount equal to the dues required to be a member of the Union." *Id.,* at 3. In amended § 40.6, the CBA further provides that "[a]n employee may revoke his or her authorization for payroll deduction of payments to the Union by written notice to the Employer and the Union in accordance with the terms and conditions of their signed membership card." *Id.,* at 7. The 2017 membership agreement, entitled "Payroll Deduction Authorization & Maintenance of Membership Card," provided, in part:

> Yes! I stand united with my fellow State employees...100% Union...
>
> Yes! I want to be a union member...
>
> Effective immediately, I hereby voluntarily authorize and direct my Employer to deduct from my pay each period, the amount of dues as set in accordance with the [Union] Constitution and By-Laws and authorize my Employer to remit such amount semi-monthly to the Union (currently 1.5% of my salary per pay period not to exceed the maximum). This voluntary authorization and assignment shall be irrevocable for a period of one year from the date of execution or until the termination date of the collective bargaining agreement (if there is one) between the Employer and the Union, whichever occurs sooner, and for year to year thereafter unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period, regardless of whether I am or remain a member of the Union, unless I am no longer in active pay status in a [Union] bargaining unit; provided however, if the applicable collective-bargaining agreement specifies a longer or different revocation period, then only that period shall apply. This card supersedes any prior check-off authorization card I signed. I recognize that my authorization of dues deductions, and the continuation of such authorization from one year to the next, is voluntary and not a condition of my employment.

***10** Dkts. 44-11 to 44-17.

The plain language of RCW 41.80.100 and the CBA do not compel involuntary dues deductions and do not violate the First Amendment. The parties do not dispute that all the Plaintiffs here signed the membership agreements and that they did not need to do so as a condition of their employment. The parties do not dispute that the State plays no role in deciding what terms and conditions are in the membership agreements; and under state law, cannot participate in any way in making those determinations. The State's deduction of dues from the Plaintiffs' pay is pursuant to the Plaintiffs' explicit written instructions in the 2017 agreements. The fact that the Plaintiffs are now challenging the constitutional validity of the underlying agreements does not lead to liability for the State, especially where the State is prohibited from interfering with Union activity. Further, Plaintiffs' assertions that the agreements are not valid because they had not waived their First Amendment rights under *Janus* in their authorization agreements because they did not know of those rights yet, is without merit. Plaintiffs seek a broad expansion of the holding in *Janus*. *Janus* does not apply here – Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here. *See Cooley v. California Statewide Law Enforcement Ass'n*, 2019 WL 331170, at 2 (E.D. Cal. Jan. 25, 2019). "The relationship between unions and their voluntary members was not at issue in *Janus.*" *Id.* The notion that the Plaintiffs may have made a different choice if they knew "the Supreme Court would later invalidate public employee agency fee arrangements [in *Janus*] does not void" their previous knowing agreements. *Id.*

To the extent that the Plaintiffs now argue that the membership agreement was not supported by

consideration, is invalid due to mistake, was made under duress, or make some other assertion of validity based on contract law, they make no showing that the State Defendants are now liable under the First Amendment for those alleged failings. To do so would require the State Defendants to make a judgment about the validity of the contracts the Union and its members choose to enter, something the State is prohibited from doing. The State is not a party to the membership agreement. The Plaintiffs "cannot now invoke the First Amendment to wriggle out of [their] contractual duties." *See Smith v. Superior Court, County of Contra Costa,* 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018). The Plaintiffs' First Amendment claims asserted against the State Defendants should be dismissed.

*3. Conspiracy Claim for Violation of the First Amendment Asserted Against all Defendants*

As stated above, Plaintiffs' First Amendment claims against the Union and State Defendants should be dismissed. Their conspiracy claim, which is predicated on the alleged First Amendment violations, also fails. *Woodrum v. Woodward County, Okla.,* 866 F.2d 1121, 1126 (9th Cir. 1996). Further, the Plaintiffs do not to point to any evidence in the record to support their claim. The Plaintiffs' conspiracy claim should be dismissed.

**E. CLAIMS FOR UNJUST ENRICHMENT AGAINST THE UNION**

***11** The Plaintiffs make claims for unjust enrichment against the Union. (Due to the operation of the Eleventh Amendment, the unjust enrichment claims against the State Defendants should be dismissed, as explained above.) Both the Plaintiffs and the Union move for summary judgment on this claim.

The elements of unjust enrichment are: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young v. Young,* 164 Wn.2d 477, 484–85 (2008). "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Id.,* at 484.

The parties here have a contractual relationship. The Plaintiffs' unjust enrichment claims are related to the same matter upon which they seek recovery. The unjust enrichment claims should be dismissed.

Moreover, even if the parties did not have a written contractual relationship, the Plaintiffs have failed to show that there is sufficient evidence in the circumstances here that it would be unjust for the Union to retain the dues. The Plaintiffs acknowledge that as Union members they received benefits and rights not available to non-members. Further, even after they announced that they no longer wanted to be Union members, it is not unjust for them to have to continue to pay dues for a limited time because that is what they agree to. The Plaintiffs have failed to show that the Union was unjustly enriched.

**F. CONCLUSION**

By this Order, all claims should be dismissed. This case should be closed.

**III. ORDER**

It is **ORDERED** that:

• The State Defendants' Motion for Summary Judgment (Dkt. 47) **IS GRANTED**;

• The Union's Motion for Summary Judgment (Dkt. 46) **IS GRANTED**; and

• The Plaintiffs' Cross-Motion for Summary Judgment (Dkt. 48) **IS DENIED**.

• This case **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 15 th day of February, 2019.

~~A ROBERT J. BRYAN~~

United States District Judge

**All Citations**

--- F.Supp.3d ----, 2019 WL 652362

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.