Christopher D. Banys (State Bar No. 230038)
cdb@banyspc.com
BANYS, P.C.
567 Marsh Street
San Luis Obispo, CA 93401
Telephone:  (805) 996-0394
Facsimile:  (650) 353-2202

Attorneys for Plaintiffs and the Proposed Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JORGE BERMUDEZ, VIRGINIA VALDEZ, and ANGELICA PEDROZO, as individuals, and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521, and COUNTY OF SANTA CLARA,<br><br>                      Defendants. | Case No. 3:18-cv-04312-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  January 9, 2020<br>Time:  10:00 a.m.<br>Courtroom:  4<br>Judge:  Hon. Vince Chhabria |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................3

        A.      Procedural History and Plaintiff's Claims .................................................3

        B.      Discovery ....................................................................................................4

        C.      Mediation and Risk Factors Considered .....................................................5

                1.      The Risk of the Court Declining to Certify a Class ..........................5

                2.      The Risk of Losing on Some or All of the Remaining Claims ............5

        D.      The Proposed Settlement .............................................................................6

III.    LEGAL STANDARD ............................................................................................8

IV.     ARGUMENT ........................................................................................................9

        A.      Certification of the Settlement Class Is Appropriate .................................9

                1.      Plaintiff Satisfies Each of the Four Rule 23(a) Prerequisites ...........10

                2.      Plaintiffs Satisfy the Rule 23(b)(3) Predominance and Superiority
                        Requirements ..................................................................................13

        B.      Plaintiff's Proposed Class Notice Is Sufficient .........................................14

        C.      The Settlement Is Fair, Reasonable, and Adequate ...................................15

                1.      There Are Substantial Risks Associated With Further Litigation ......16

                2.      The Settlement Provides Substantial Non-Monetary and Monetary
                        Value to Class Members .................................................................16

                3.      The Settlement Is the Product of Substantial Discovery and a Full-Day
                        Mediation Under the Guidance of Judge Ryu ..................................18

                4.      The Settlement Has No Obvious Deficiencies ..................................18

                5.      The Settlement Does Not Unfairly Grant Preferential Treatment to
                        Any Class Members ........................................................................19

V.      CONCLUSION ....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ................................................... 18

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 9

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................................... 12

*Bain v. California Teachers Ass'n*, 156 F.Supp.3d 1142 (C.D. Cal. 2015) .................................... 6

*Bond v. Ferguson Enterprises, Inc*., No. 1:09-CV-01662, 2011 WL 284962 (E.D. Cal.
   Jan. 25, 2011) ........................................................................................................................ 19

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D.Cal.1979) ............................................................. 17

*Churchill Village, L.L.C. v. General Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ............................ 15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................ 9

*Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030 (N.D. Cal. 2016) .................................................. 2, 9, 15

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................................ 15

*Custom LED, LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 6114379 (N.D. Cal.
   Nov. 20, 2013) ....................................................................................................................... 19

*Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953 (N.D. Cal.
   Aug. 21, 2015) .................................................................................................................. passim

*Dudum v. Carter's Retail, Inc.,* No. 14-CV-00988-HSG, 2015 WL 5185933 (N.D. Cal.
   Sept. 4, 2015) .......................................................................................................................... 9

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ................. 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998) ................................. passim

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...................................................... 11

*Harris v. Vector Mktg. Corp.*, No. 08–5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ....... 18

*Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal.
   July 23, 2015) ......................................................................................................................... 20

*In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441
   (N.D. Cal. Sept. 2, 2015) ........................................................................................................ 17

*In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008)........................................... 16

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. 2007)....................................... 15

*Janus v. American Federation of State, County, and Municipal Employees, Council 31*,
   138 S.Ct. 2448 (2018)........................................................................................................ 3

*Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518
   (N.D. Cal. June 20, 2007) ................................................................................................. 10

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007)...................................... 12

*Lundell v. Dell, Inc.*, No. C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).......... 16

*Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015).. 20

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997)..................................................................... 12

*Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) ............................................................... 10

*Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal.
   Feb. 20, 2015) ............................................................................................................. 15, 16

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013) .................................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).............. 9, 15

*Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal.
   May 6, 2014)..................................................................................................................... 20

*Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015).................................................................. 13

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) .......................................... 10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 16

*Rannis v. Recchia*, 380 F.App'x 646 (9th Cir. 2010) ................................................................. 10

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................................. 12

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104
   (S.D. Cal. June 1, 2010)..................................................................................................... 17

*Smith v. Superior Court*, No. 18-CV-05472-VC, 2018 WL 6072806 (N.D.Cal. Nov. 16, 2018) .. 6

*Smith v. United Transp. Union Local No. 81*, 594 F.Supp. 96 (S.D. Cal. 1984).......................... 6

*Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. 2014) ........................................................... 19

*Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013) .... 19

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ............................................. 10

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114 (E.D. Cal. 2009) ........................... 10

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA-EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......................................................................................................... 18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 10

**Statutes**

Fed. R. Civ. P. 23 .................................................................................................................. passim

**Treatises**

Newberg on Class Actions § 11.41 ................................................................................................ 16

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 9, 2020, at 10:00 a.m., or as soon thereafter as the matter can be heard before the Honorable Vince Chhabria, in Courtroom 4, 17th Floor, U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Plaintiff Virginia Valdez ("Plaintiff" or "Valdez") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

(1)     preliminarily approving the Settlement Agreement between Plaintiff and Defendants, dated November 19 2019, on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the class;

(2)     certifying the proposed settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

(3)     approving the form and content of the proposed class notice and notice plan;

(4)     appointing Banys, P.C. to represent the class as class counsel;

(5)     appointing Defendant Service Employees International Union, Local 521 as Settlement Administrator;

(6)     scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and an enhancement payment to Plaintiff; and

(7)     granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Christopher D. Banys filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Virginia Valdez moves this

Court for an order preliminarily approving a proposed class action settlement agreement ("Settlement" or "Settlement Agreement") entered into by Valdez (the only remaining named Plaintiff in this action) and Defendants Service Employees International Union, Local 521 ("Local 521") and the County of Santa Clara ("the County"). The Settlement was achieved with the assistance of Magistrate Judge Donna Ryu, who facilitated negotiations between the parties in a full-day mediation. The Settlement Agreement is attached as Exhibit 1 to the supporting Declaration of Christopher D. Banys ("Banys Decl.") filed concurrently with this motion.

Under the Settlement Agreement, Defendant Local 521 will create a non-reversionary settlement fund of $75,000 to be distributed among the proposed class, which consists of 183 individuals. In addition, Local 521 has agreed to separately pay for Valdez's attorney fees and costs up to a maximum of $25,000, subject to this Court's approval. Importantly, any attorney fee and/or cost award will not affect the amount of the settlement fund. Nor will there be any administrative costs taken from the settlement fund, as Local 521 will handle the administration of the settlement at its own expense. Also, as non-monetary relief, Local 521 will use its best efforts to encourage its Chapters to amend their bylaws to address Valdez's concerns regarding time restrictions on union membership terminations.

The Settlement readily satisfies the standard for preliminary approval—it is "fair, reasonable, and adequate" considering "the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each class member will receive from the settlement." *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1037 (N.D. Cal. 2016).

Accordingly, Valdez seeks an order: (1) granting preliminary approval of the Settlement, (2) certifying a Settlement Class for settlement purposes only, (3) approving the manner and forms of giving notice to the Class, (4) appointing Banys, P.C. to represent the class as class counsel; (5) appointing Local 521 as Settlement Administrator, and (6) establishing a timetable for final approval of the Settlement.

## II.     FACTUAL BACKGROUND

### A.     Procedural History and Plaintiff's Claims

This case previously involved three named plaintiffs – Jorge Bermudez, Virginia Valdez, and Angelica Pedrozo, all of whom are employees in the Department of Employment and Benefit Services ("DEBS") of the County.  Local 521 is a union that represents County employees as well as other public-sector employees in California.  Under a collective bargaining agreement between Local 521 and the County, all County employees were required as a condition of their employment to either: 1) become a member of Local 521 and pay union dues to Local 521, or 2) remain a non-member but still pay agency fees to Local 521.  In addition, Plaintiff alleges that County employees who were members of Local 521 were not allowed to terminate their membership with the union except for during a small window of time near the end of the term of the collective bargaining agreement. Local 521 has entered into collective bargaining agreements with other public sector employers in California that contain similar language regarding termination of membership.

In *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S.Ct. 2448 (2018), the Supreme Court held that unions could not force public employees to pay agency fees.  Plaintiffs subsequently brought this action to recover agency fees that were collected from public employees by Local 521 prior to the *Janus* decision, as well as to recover union dues that were collected from Local 521 members as a result of Local 521's time restriction on membership terminations.

On April 16, 2019, this Court dismissed all claims in the case asserted by the three named plaintiffs except for those related to Valdez's allegation that she was improperly restricted from terminating her membership with Local 521.  (Dkt. No. 82).  The substance of this allegation is that Defendants improperly deducted union dues from Valdez's paycheck from March 2016 to August 2018, despite a request to terminate her union membership in March 2016.  (*See* Dkt. No. 48 at 4-7).  Ms. Valdez's allegation that she attempted to terminate her union membership is based on her completion and submission of an authorization for payroll deduction form in which

she sought to change her payment level from full membership dues to service fees. Notwithstanding the parties' dispute as to whether her submission of that form sufficiently conveyed to Local 521 an intent to resign her union membership, Plaintiff alleges that Defendants refused to process her membership resignation because, under Local 521's policy regarding changes in membership status, County employees were not permitted to terminate their union membership until the last five workdays in December in the year prior to the end of Local 521's collective bargaining agreement with the County. (*See id*. at 6). Because that agreement did not end until the middle of 2019, Local 521's policy prohibited Valdez from terminating her union membership until December 2018 – over two and a half years later. Until then, Defendants continued to deduct union dues from Valdez's paycheck. Valdez asserts that Defendants' refusal to allow her to terminate her membership at the time of her choosing violated her First Amendment rights under 42 U.S.C. § 1983. (*See* Dkt. No. 21 at 10-11). Valdez also has asserted related state law claims for conversion and restitution of money had and received. (*See id.* at 11-12).

Local 521's time restriction on membership terminations was not limited to Santa Clara County. Rather, similar time restrictions are included in the Bylaws for certain other Local 521 Chapters that include members who were employees of other public entities in California as well. Thus, Valdez seeks to pursue her claims individually as well as on behalf of a class consisting of all Local 521 members who experienced similar difficulty terminating their membership from the union.

B.     **Discovery**

Following the Court's summary judgment order in April 2019, the parties engaged in substantial discovery regarding Valdez's remaining claims in the case. Specifically, Valdez propounded on Defendants and received responses to requests for production and interrogatories. (Banys Decl., ¶ 7). The information that Valdez obtained from Defendants through these discovery requests include over 5,000 pages of documents from Defendants, including

information regarding the Bylaws of certain Local 521 Chapters regarding union membership terminations, correspondence between Local 521 and members requesting termination of their union membership, and records regarding Local 521's processing of membership termination requests and authorization for payroll deduction forms.  (*Id.*).  This allowed Valdez to determine the size of the class (183 individuals) as well as the scope of potential damages for the class.  (*Id.* at ¶ 8).

### C.     Mediation and Risk Factors Considered

On September 6, 2019, the parties engaged in a full-day mediation session presided over by the Honorable Magistrate Judge Donna M. Ryu.  At the close of the day, the parties were able to reach a settlement of the case.  (*See* Dkt. No. 108).  Valdez's decision to accept the terms of the settlement agreement was based upon Counsel's experience, in light of the known benefits of the resolution, and weighed against the risks of continued litigation, including the following:

### 1.     The Risk of the Court Declining to Certify a Class

While Valdez believes that class certification of this action would be appropriate regardless of whether there is a settlement, she also recognizes that Defendants would be able to assert a number of arguments in opposition to a motion for class certification, which if successful, could result in no recovery whatsoever for the vast majority, if not all, of the proposed class members.  For example, Defendants argue a lack of commonality among class members because they belonged to different Chapters of Local 521 that did not necessarily have the same time restrictions on membership terminations.  Defendants also argue that Valdez's claims are not typical of class members because Valdez became a union steward in 2017 and therefore voluntarily participated in union activities after the request to change her dues status, unlike other class members.  (*See* Dkt. No. 42 at 5).  Valdez would have to explore these issues in discovery and address them in her motion for class certification.

### 2.     The Risk of Losing on Some or All of the Remaining Claims

Even assuming that Valdez could have a class certified, there are a number of defenses that Defendants have raised that could substantially impact some or all of her remaining claims

in the case.  First, Defendants have asserted that Valdez lacks standing to assert a claim under 42 U.S.C. § 1983 because the time restriction on membership terminations was the result of a private agreement between Local 521 and its members and therefore does not constitute "state action."  (*See* Dkt. No. 42 at 15).  There is conflicting law on this issue.  *Compare Smith v. United Transp. Union Local No. 81*, 594 F.Supp. 96, 99 (S.D. Cal. 1984) w*ith Bain v. California Teachers Ass'n*, 156 F.Supp.3d 1142, 1145, 1148-49 (C.D. Cal. 2015).  Thus, there is uncertainty as to whether Valdez's section 1983 claim could withstand a standing challenge.

Defendants have also asserted that Valdez and the proposed class members voluntarily agreed to become members of Local 521, and as a result they are contractually bound by the time restrictions that Local 521 placed on when they could terminate their union membership.  (*See* Dkt. No. 42 at 13-16).  This Court recently found that a contractual provision requiring union members to continue paying union dues for a year, even if they terminated their membership earlier than that, was enforceable and not a violation of the First Amendment.  *See Smith v. Superior Court*, No. 18-CV-05472-VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018).  While Local 521's policy in this case would require union members to pay dues for a significantly longer time (nearly three years in Valdez's case), this Court's recent decision in *Smith* suggests that Valdez may have a difficult time proving that Local 521's time restriction on membership terminations is so egregious as to be unconstitutional and/or unenforceable.

Defendants have also asserted that Valdez's state law claims are preempted by California's Meyers-Milias-Brown Act ("MMBA").  (*See* Dkt. No. 42 at 16-20).  Here again, the law is uncertain.  (*See* Dkt. No. 48 at 15-18).  Thus, there is a significant risk that, if Defendants were to file a summary judgment motion asserting MMBA preemption, the Court could dismiss Valdez's claims and require her to pursue relief in front of California's Public Employment Relations Board, thereby creating further delay in the resolution of this matter.

### D.      The Proposed Settlement

As noted above, the parties' agreement provides for monetary compensation to Class

Members as well as forward-looking non-monetary relief.  The monetary component of the agreement to be paid to Class Members is a $75,000 non-reversionary Settlement Fund.  (Banys Decl., Ex. 1 at ¶ 27).  The Settlement Fund, less any class representative enhancement ("Net Settlement Fund"), will be distributed to Class Members pursuant to a plan of allocation.  (*Id.* at ¶¶ 31-35).

The plan of allocation for distributing the Net Settlement Fund is based on the amount of union dues that each Class Member paid during the damage period, which is from September 10, 2015 through the date of preliminary approval.[1]  Each Class Member will receive a pro rata share of the Net Settlement Fund based on a calculation of how much union dues they paid starting from the date that they submitted a written request to terminate their union membership, or completed an authorization for payroll deduction form that attempted to change dues status to service fee, through the earlier of: 1) the date that such membership was actually terminated (or, if membership has not yet been terminated, the preliminary approval date), or 2) the date that they executed a membership card re-affirming their desire to maintain their membership in the union.  (*Id.* at ¶ 33).  Thus, each Class Member will receive a payment that is proportional to how much money they allegedly involuntarily paid to the union over the damages period, as compared to other Class Members.

Under the Agreement, notice will be distributed to Class Members via first class mail. (*Id.* at ¶¶ 38, 41; Ex. B (class notice)).  Local 521 will also set up a website where Class Members can obtain detailed information regarding the case and the Settlement.  (*Id.* at ¶ 41). Settlement payments will be made by checks that are also sent via first class mail.  (*Id.* at ¶ 34). No Class Member will be required to file a claim in order to receive a payment.

Following the initial distribution, Local 521 will make reasonable, good faith efforts to

---

[1] September 10, 2015 is three years prior to Valdez's filing of her claims in this case as part of the First Amended Complaint (Dkt. No. 21) – the farthest date back that Valdez could claim damages for her state law claims.  *See* Cal. Code. Civ. Proc. § 338(c).

distribute payments to Class Members who have not successfully received payment.  (*Id.*).  If there is more than $5,000 remaining in the settlement fund after this process, there will be a second distribution of all unclaimed funds to the class members.  (*Id.*).  If there is less than $5,000 remaining in the settlement fund, Local 521 shall pay the remainder to Gardner Health Services as a *cy pres* payment.[2]  (*Id.*).

Significantly, this settlement is non-reversionary.  (*See id.*).  No funds from the settlement, including unclaimed funds, will revert to Defendants; the full amount of the Net Settlement Fund will be paid to either Class Members or an agreed-upon *cy pres* recipient if any remaining settlement fund amount is so small that it makes a second distribution among the Class Members administratively impracticable.

In addition to monetary compensation, Local 521 also agreed as part of this settlement to use its best efforts to encourage its chapters to amend their Bylaws to delete any provisions that set any time restrictions on when members can terminate their union membership.  (*Id.* at ¶ 30). Local 521 ceased enforcing such restrictions when *Janus* issued on June 27, 2018, which is how Valdez was permitted to resign her union membership and cease paying union dues in August 2018, but those restrictions still remain set forth in the Bylaws of some of Local 521's Chapters. Such a process is necessary because Local 521 cannot unilaterally change the Bylaws of its Chapters.  Rather, the process for amending those Bylaws requires specific procedures, including but not limited to, a vote of the Chapter's members.

## III.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Dudum v. Carter's Retail, Inc.,* No. 14-CV-00988-HSG, 2015 WL 5185933, at *2 (N.D. Cal.

---

[2] Gardner Health Services is a non-profit organization that provides health care services to low-income and disadvantaged individuals in Santa Clara County.  *See* www.gardnerhealthservices.org.

Sept. 4, 2015) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the initial stage, the inquiry should be whether the settlement is "fair, reasonable, and adequate," considering "the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each class member will receive from the settlement." *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1037 (N.D. Cal. 2016).

## IV.    ARGUMENT

### A.    Certification of the Settlement Class Is Appropriate

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Valdez proposes that the Court certify the following class for settlement purposes: "All public-sector members of Local 521 from September 10, 2015 through the Preliminary Approval Date who: 1) submitted to Defendants a written request to terminate their membership with Local 521, and thereafter continued to have union dues deducted from their paychecks based on a temporal limitation on resigning from union membership, or 2) who submitted an Employee Authorization for Payroll Deduction of Union Dues or Service Fees form with the 'Service Fee' box checked, and thereafter continued to have union dues deducted from their paychecks based on Local 521's policy of not treating such forms as indicating a request to resign from union membership."[3] The proposed settlement class can be certified under Rule 23 if Valdez can satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

---

[3] This class definition is substantially the same as the "Termination Class" defined in the First Amended Complaint (*see* Dkt. No. 21, at ¶ 21(c)), but more precisely delineates how Defendants are to identify the individuals who would fall within the class to avoid any ambiguity.

### 1.      Plaintiff Satisfies Each of the Four Rule 23(a) Prerequisites

"The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

### a)      The Settlement Class is Sufficiently Numerous and Ascertainable

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.  *Rannis v. Recchia*, 380 F.App'x 646, 651 (9th Cir. 2010); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518, at *19 (N.D. Cal. June 20, 2007) ("numerosity may be presumed when the class comprises forty or more members").  In addition, the class should be "ascertainable," *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, Local 521 has already determined from its records that there are 183 union members who fall within the proposed class.  (*See* Banys Decl., ¶ 8).  Accordingly, the settlement class is both sufficiently numerous and ascertainable.

### b)      Class Members Share Common Issues of Law and Fact

In order to satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff must "affirmatively demonstrate" that her claims depend upon at least one common contention the truth or falsity of which "will resolve an issue that is central to the validity" of each one of the class members' "claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  That is, the lawsuit must call upon the court or jury to decide at least one factual or legal

question that will generate a common answer "apt to drive the resolution of the litigation." *Id.*; *see also id.* at 359 (holding that "even a single common question" will suffice to satisfy Rule 23(a)) (citation and internal modifications omitted).

The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998)).

Here, resolution of each class member's claim requires resolution of the key questions whether Local 521 had a policy of prohibiting members from resigning outside of certain temporal window periods set forth in Chapter bylaws or certain collective bargaining agreements; whether Local 521 had a policy of treating forms received from members in which they had authorized the deduction of "Service Fees" rather than membership dues as administrative mistakes instead of as resignation requests, or as resignation requests barred by a policy of prohibiting resignation outside the specified temporal window periods; and if so, whether these policies were consistent with the First Amendment.  These common questions are sufficient to meet the requirements of Rule 23(a)(2).

### c)  Plaintiff's Claims are Identical to Class Members' Claims

Rule 23(a)(3)'s typicality requirement focuses on the relationship of facts and issues between the class and its representatives.  *Hanlon*, 150 F.3d at 1020.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Id.*  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent

class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Here, Valdez and all Class Members allege that they have been injured by the uniform membership resignation practices set forth above in which Defendants allegedly engaged, and all assert the same claims and request the same damages arising therefrom. Accordingly, Valdez meets the Rule 23(a)(3) typicality requirement.

**d)  Plaintiff and Her Counsel Will Adequately Represent the Class**

Members of a class may sue as representatives on behalf of the class only if they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, neither Valdez nor her counsel have any conflicts of interest with other class members. Valdez does not seek any different relief from the relief that she seeks on behalf of all other class members. In addition, Valdez's counsel has also demonstrated their ability to zealously represent the interests of the class by, for example, defeating Defendants' motion for summary judgment with respect to her claims, by obtaining the information necessary to evaluate the merits and damages at issue in the case, by obtaining information necessary to move for class certification, and by negotiating a resolution of this matter that provides Class Members with monetary relief as well as significant non-monetary forward-looking relief. Moreover, Valdez's

counsel have substantial experience litigating and settling class action cases as well as other complex litigation matters.  (*See* Banys Decl., ¶¶ 19-28).

### 2.   Plaintiffs Satisfy the Rule 23(b)(3) Predominance and Superiority Requirements

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022–1023.

#### a)   Common Issues Predominate Over Individualized Issues

As discussed above, all Class Members are alleged to have been injured by the alleged uniform practices of Defendants limiting the time period during which members could terminate their union membership and failing to process changes on authorization for payroll deduction forms as requests to resign membership.  Thus, for all Class Members, the key questions for liability are whether those Defendants engaged in those practices and, if so, whether they violated the First Amendment.  These common legal questions predominate over any individualized issues, such as how much in damages any particular Class Member suffered as a result of these practices.

#### b)   A Class Action Is Superior to Hundreds of Individual Actions

"[T]o meet the requirement of superiority, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy."  *Noll v. eBay, Inc*., 309 F.R.D. 593, 604 (N.D. Cal. 2015).  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.* "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."  *Hanlon*, 150 F.3d at 1023.

Here, a class action settlement would be the superior method of resolving the claims of close to 200 members of Local 521 for several reasons: First, the resolution in a single class action settlement of the common questions of the application, if any, of PERB preemption; whether a 42 U.S.C. § 1983 claim can be maintained; the existence of Defendants' alleged restrictive membership-resignation practices; and the legal ramifications any such practices would be more efficient than having the Court address each of these issues 183 times in separate cases. Such a class settlement would relieve the class members of proving up each of these common issues in separate trials, and would also eliminate any concerns about manageability that might arise were the Court to have to address the individualized questions of damages or liability presented by the class members' claims. Further, individual proceedings over damages that for the vast majority of Class Members will likely not exceed $1,000 (for example, Valdez's estimated damages for her claims are, at most, under $900) are both inefficient and unrealistic. (*See* Banys Decl., ¶ 12).

For all of these reasons, the proposed class should be certified for settlement purposes.

**B.     Plaintiff's Proposed Class Notice Is Sufficient**

For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort. *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953, at *10 (N.D. Cal. Aug. 21, 2015). The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard." *Id.* (citing *Churchill Village, L.L.C. v. General Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004), internal quotations omitted).

Here, the parties' proposed Class Notice satisfies each of the above requirements. (*See* Banys Decl., Ex. 1 at Ex. B). In addition, the Class Notice will be mailed to all of the Class Members, and Local 521 will also set up a website where Class Members can obtain detailed information regarding the case and the Settlement. (*See id.* at ¶ 41). The form of the Class Notice and the proposed method of distributing it to the class should therefore be approved by the Court.

### C.  The Settlement Is Fair, Reasonable, and Adequate

At the preliminary approval stage, the inquiry should be whether the settlement is "fair, reasonable, and adequate," considering "the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each class member will receive from the settlement." *Cotter*, 193 F.Supp.3d at 1037. "When determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement confers." *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015). Other factors relevant to preliminary approval are whether the settlement (1) falls within the range of possible approval; (2) is the product of serious, informed, noncollusive negotiations, (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or segments of the class. *See Deaver*, 2015 WL 4999953, at *6; *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).

In addition, counsel's judgment that the Settlement is fair and reasonable is entitled to great weight. *See Churchill*, 361 F.3d at 576-77 (Ninth Circuit took into account the views of class counsel and defendants' counsel in support of the settlement). In fact, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural Telecomms.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Indeed, there is generally "an initial presumption of fairness when a

proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11.41.

> **1.** **There Are Substantial Risks Associated With Further Litigation**

A careful risk/benefit analysis must inform Counsel's valuation of a class's claims. *Lundell v. Dell, Inc*., No. C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving settlement that was "the product of uncertainty and careful risk/benefit analyses on both sides").

As discussed above, there are substantial risks that Valdez would not succeed in obtaining class certification, and that she would not overcome Defendants' various defenses to her claims. There is also a substantial risk that the total amount of damages to the class might not be large enough to justify the investment of time and resources into pursuing this case all the way through trial.

> **2.** **The Settlement Provides Substantial Non-Monetary and Monetary Value to Class Members**

With these risks in mind, the next step of this analysis is the evaluation of the nonmonetary and monetary terms of the settlement agreement. *Miller*, 2015 WL 758094, at *5.

With respect to the monetary terms of the settlement, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). This is due, in large part, to the potential pitfalls of further litigation. *See In re Omnivision Techs., Inc*., 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) ("Plaintiffs here have agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing."). Thus, the monetary value of the settlement need not meet any particular percentage threshold of the overall potential value of the case. *Id.* Additionally, "finality and speed of recovery" weigh in favor of approval, especially where there is a risk that the Class could receive less by proceeding through litigation. *Deaver*, 2015 WL 8526982, at *7.

Here, Valdez has analyzed the potential monetary value of her claims if she were to

succeed in proving them.  Based on the data provided by Local 521, Valdez has calculated that Defendants' likely exposure to damages – should she succeed in obtaining class certification, prevailing at trial, and upholding the verdict on appeal – is somewhere between $64,000 and $407,200.  (*See* Banys Decl., ¶ 13).  Thus, the $75,000 monetary component of the settlement is within this range, and just under 20% of maximum estimated potential value.  This places the monetary value of the settlement well within the range of possible approval.  *See In re High-Tech Employee Antitrust Litig*., No. 11-CV-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving settlement valued at 14% of available damages).  And, significantly, as discussed above, all net settlement funds will be distributed to Class Members or the agreed-upon *cy pres* recipient; no funds will revert to Defendants.  *See, e.g. Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013) (settlement term prohibiting reversion weighed in favor of preliminary approval).

In addition, this settlement agreement also contains an important non-monetary component, discussed above.  This provides practical and on-going benefits to Class Members as well as other existing and future union members, and strongly supports preliminary approval.  *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance.");  *Singer v. Becton Dickinson & Co*., No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *5 (S.D. Cal. June 1, 2010) (holding that non-monetary benefits to the class members weighed in favor of granting final approval of the settlement).

Ultimately, after consideration of the monetary and non-monetary terms of the settlement, and after assessment of the substantial risks of further litigation, Valdez's counsel, drawing on years of experience litigating cases like this one, and with the input of Judge Ryu, determined that agreement is fair and reasonable and constitutes a positive result for the class in this case.  This settlement falls within the range of possible approval, and the Court should grant the settlement preliminary approval.  (Banys Decl., ¶ 18).  *See Boyd v. Bechtel Corp*.,

485 F.Supp. 610, 622 (N.D.Cal.1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

> **3.**  **The Settlement Is the Product of Substantial Discovery and a Full-Day Mediation Under the Guidance of Judge Ryu**

"[T]he means by which the parties arrived at settlement" is also relevant to determining whether it is fair and reasonable.  *Harris v. Vector Mktg. Corp*., No. 08–5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value."  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007).  Additionally, "the use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at *7 (citing *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA-EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Harris*, 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel").

Here, the parties have exchanged extensive information necessary to make an informed evaluation of the case.  (*See* Banys Decl., ¶¶ 6-9).  Specifically, they have exchanged information necessary to evaluate Valdez's chances of prevailing on an opposed motion for class certification and of surviving a second summary judgment motion, and information needed to evaluate potential damages. (*See id*.).  Thus, the parties were both armed with ample information to enter into an agreement and did so under the informed guidance of an experienced magistrate judge.

> **4.**  **The Settlement Has No Obvious Deficiencies**

It is also important to consider "whether there are obvious deficiencies in the Settlement Agreement."  *Deaver*, 2015 WL 4999953, at *7.  Such "obvious deficiencies" may include an overbroad release, insufficient notice, or an inadequate form of payment.  *See, e.g., Custom LED,*

*LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013). Additionally, an attorneys' fee provision may also be preliminarily evaluated as part of this inquiry, subject to final approval. *See, e.g., Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011).

Here, Class Members will release only those claims that could arise from Defendants' time restrictions on union membership terminations and from Local 521's policy of not construing a member's checking the "Service Fee" box on the "Employee Authorization for Payroll Deduction of Union Dues or Service Fees" form as indicating an intent to resign from union membership. *See Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1334 (N.D. Cal. 2014) ("while the scope of the release in the proposed settlement is broad, it is acceptable because the claims released are limited to those based upon the facts set forth in the First Amended Complaint."). The parties have also carefully constructed a formula for payments to class members to ensure an equitable distribution of the settlement funds.  No unclaimed funds will revert to Defendants. Additionally, the class notice provides all required information to Class Members in an easy-to-read format, as discussed above.

The attorneys' fee provision permits Valdez's counsel to apply for fees and costs not to exceed $25,000; attorneys' fees will be paid out separately by Local 521, and will not have any impact on the settlement fund; and the settlement is not contingent upon the Court approving counsel's application.  As will be briefed in later papers, Valdez's counsel's request for $25,000 in fees and costs is reasonable, and actually represents significantly less than the actual amount of time and resources that Valdez's counsel invested in this litigation.  Indeed, Valdez's counsel has calculated that the lodestar for their work on Valdez's claims is at least $74,381.25.  (Banys Decl., ¶¶ 29-30).

## 5. The Settlement Does Not Unfairly Grant Preferential Treatment to Any Class Members

Lastly, it is relevant to assess whether the allocation of the settlement fund may "unfairly benefit certain class members." *Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA,

2013 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013).  "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co*., No. 13-CV-00729-HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (citing cases).  However, "courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (citing *Nguyen v. Radient Pharm. Corp*., No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)).

Here, Class Members will receive settlement amounts in proportion to the actual amount of union dues that Defendants collected from them during the damages period.  This is an equitable way of distributing the settlement fund among all affected Class Members.

Additionally, under this factor, a court may also preliminarily consider the propriety of agreed-upon class representative enhancements, which, like a request for attorneys' fees and costs, is subject to further review on final approval.  *Deaver*, 2015 WL 4999953, at *8.

As will also be briefed in later papers, the $500 agreed-upon enhancement for Plaintiff is reasonable given the amount of time she has expended in pursuing this action and assisting her Counsel in discovery, in opposing Defendants' motion for summary judgment, and participating in mediation.  It is also in line with awards in other cases in California district courts.  *See, e.g., Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *5 (N.D. Cal. Mar.31, 2015) (awarding $7,500 to each of the four class representatives from $750,000 fund).

## V.    CONCLUSION

For the foregoing reasons, Valdez respectfully requests that the Court grant this Motion for Preliminary Approval and issue an order (1) granting preliminary approval of the Settlement, (2) certifying a Settlement Class for settlement purposes only, (3) approving the manner and forms of giving notice to the Class, (4) appointing Banys, P.C. to represent the class as class counsel; (5) appointing Local 521 as Settlement Administrator, and (6) establishing a timetable for final approval of the Settlement.

Dated:  November 19, 2019                    Respectfully submitted,


                                             By:  */s/ Christopher D. Banys*
                                             Christopher D. Banys
                                             Richard C. Lin
                                             cdb@banyspc.com
                                             rcl@banyspc.com
                                             BANYS, P.C.
                                             567 Marsh Street
                                             San Luis Obispo, CA 93401
                                             Telephone:  (805) 996-0394
                                             Facsimile:   (650) 353-2202

                                             **ATTORNEYS FOR PLAINTIFFS
                                             AND THE PROPOSED CLASSES**