Christopher D. Banys (State Bar No. 230038)
cdb@banyspc.com
BANYS, P.C.
567 Marsh Street
San Luis Obispo, CA 93401
Telephone:  (805) 996-0394
Facsimile:  (650) 353-2202

Attorneys for Plaintiffs and the Proposed Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JORGE BERMUDEZ, VIRGINIA VALDEZ, and ANGELICA PEDROZO, as individuals, and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521, and COUNTY OF SANTA CLARA,<br><br>     Defendants. | Case No. 3:18-cv-04312-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  May 21, 2020<br>Time:  10:00 a.m.<br>Courtroom:  4<br>Judge:  Hon. Vince Chhabria |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................................1

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    CLASS NOTICE AND CLAIMS ADMINISTRATION ........................................3

IV.     ARGUMENT .........................................................................................................4

A.      Final Approval of the Settlement Class Is Appropriate ..............................................4

        1.      Plaintiff Satisfies Each of the Four Rule 23(a) Prerequisites. ............. 5

        2.      Plaintiff Satisfies the Rule 23(b)(3) Predominance and Superiority
                Requirements. ..................................................................... 8

B.      Class Notice Was Reasonable And Adequate. .........................................................9

C.      The Settlement Is Fair, Reasonable, and Adequate And The Court Should Finally
        Approve It. ...................................................................................................10

        1.      There Are Substantial Risks Associated With Further Litigation ...... 11

        2.      The Settlement Provides Substantial Non-Monetary and Monetary
                Value to Class Members .................................................... 11

        3.      The Settlement Is the Product of Substantial Discovery and a Full-
                Day, Arms-Length Mediation Under the Guidance of Judge Ryu. .... 13

        4.      The Settlement Has No Obvious Deficiencies................................... 13

        5.      Counsel's Experience And Class Member's Response Weigh In Favor
                Of Final Approval. .............................................................. 14

        6.      The Claims Process Is Convenient And Efficient.............................. 14

        7.      The Requested Attorney Fees And Expenses Are Reasonable.......... 15

        8.      The Allocation is Fair and Reasonable. ............................................ 15

V.      CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007)................................................... 13

*Allen v. Bedolla,* 787 F.3d 1218 (9th Cir. 2015)……... …………………………………………10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 5

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................................ 7

*Bond v. Ferguson Enterprises, Inc*., No. 1:09-CV-01662, 2011 WL 284962 (E.D. Cal.
    Jan. 25, 2011)........................................................................................................................... 14

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D.Cal.1979) ........................................................... 13

*Churchill Village, L.L.C. v. General Elec. Co.*, 361 F.3d 566 (9th Cir. 2004)...................... 10, 14

*Cotter v. Lyft, Inc*., 193 F.Supp.3d 1030 (N.D. Cal. 2016)...................................................... 2, 11

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)......................................................................... 14

*Custom LED, LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 6114379 (N.D. Cal.
    Nov. 20, 2013) .......................................................................................................................... 13

*Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953 (N.D. Cal.
    Aug. 21, 2015) .................................................................................................................... passim

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010).................. 6

*Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019-1020 (9th Cir. 1998) ................................. passim

*Hanon v. Dataproducts Corp*., 976 F.2d 497 (9th Cir. 1992)........................................................ 7

*Harris v. Vector Mktg. Corp*., No. 08–5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)....... 13

*Hendricks v. StarKist Co*., No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal.
    July 23, 2015)............................................................................................................................ 15

*In re High-Tech Employee Antitrust Litig*., No. 11-CV-02509-LHK, 2015 WL 5159441
    (N.D. Cal. Sept. 2, 2015) .......................................................................................................... 12

*In re Omnivision Techs., Inc*., 559 F.Supp.2d 1036 (N.D. Cal. 2008)......................................... 12

*In re Tableware Antitrust Litig*., 484 F.Supp.2d 1078 (N.D. Cal. 2007)..................................... 11

*Janus v. American Federation of State, County, and Municipal Employees, Council 31*,
  138 S.Ct. 2448 (2018) ........................................................................................................ 2

*Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518
  (N.D. Cal. June 20, 2007) .................................................................................................. 5

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007)........................................ 7

*Lundell v. Dell, Inc.*, No. C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).......... 11

*Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015).. 16

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997)........................................................................ 7

*Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) .................................................................. 5

*Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal.
  Feb. 20, 2015) ................................................................................................................. 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).................. 14

*Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal.
  May 6, 2014) .................................................................................................................... 15

*Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015) .................................................................... 9

*Norris v. Mazzola,* 2017 WL 6493091 at *4 (N.D. Cal. Dec. 19, 2017)…………………………..10

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ............................................. 5

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................... 11

*Rannis v. Recchia*, 380 F.App'x 646 (9th Cir. 2010) .................................................................... 5

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ...................................................................... 7

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104
  (S.D. Cal. June 1, 2010).................................................................................................... 12

*Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. 2014).......................................................... 14

*Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013) .... 15

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union,
  AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ................................................ 5

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114 (E.D. Cal. 2009) ............................. 5

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA-EMC, 2012 WL 5878390
    (N.D. Cal. Nov. 21, 2012) ........................................................................................ 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................... 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 6

**Statutes**

Fed. R. Civ. P. 23 ...................................................................................................... passim

**Treatises**

Newberg on Class Actions § 11.41 ............................................................................. 14

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 21, 2020 at 10:00 a.m., or as soon thereafter as the matter can be heard before the Honorable Vince Chhabria, in Courtroom 4, 17th Floor, U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Plaintiff Virginia Valdez ("Plaintiff" or "Valdez") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

(1)     Granting final approval of the Settlement Agreement between Plaintiff and Defendants, dated November 19 2019, on the grounds that its terms are sufficiently fair, reasonable, and adequate;

(2)     Finally determining that the Settlement Class, as defined in the Court's Preliminary Approval Order (Dkt. No. 120) and in the Settlement, satisfies the prerequisites for maintaining a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) and certifying the Settlement Class;

(3)     Finally determining that the Settlement is fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23(e); and

(4)     Dismissing this action with prejudice.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Christopher D. Banys filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

On January 15, 2020 (Dkt. No. 120) the Court granted preliminary approval of the proposed Settlement, provisionally certified the proposed class for settlement purposes, directed notice to the class, and scheduled a final approval hearing for May 21, 2020.  Plaintiff filed a

Motion for Attorney Fees, Expenses and Enhancement on March 9, 2020 (Dkt. No. 121).

Since then, the reaction from class members has been unanimously in favor of the settlement: no class member has objected, and no class member has asked to be excluded. Declaration of Ming Lee ("Lee Decl.")  Para. 5-6 (Dkt. No. 124).  And SEIU Local 521, acting as settlement administrator, was able to reach the vast majority of class members, 175 out of 177. *Id.* at para. 4.

As evidenced by the universal acceptance by class members, the Settlement is fair, reasonable and adequate.  The Settlement represents a win for county workers in the midst of withering opposition from Defendants and the near-total defeat of the several post- *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S.Ct. 2448 (2018), attempts to recover back agency fees from Defendants.

Under the Settlement, the class receives $75,000 (with $500 requested as an enhancement to Plaintiff Valdez and $74,500 in a non-reversionary fund for the class members) for money collected from those who attempted to resign Union membership but were prevented from doing so by extremely onerous conditions imposed by the Union.  In addition to the monetary settlement, the Union has committed to working with its Chapters to revise its policies.

Absent this settlement, the class would face tremendous costs and risks of continued litigation, which may exceed the value of the remaining claims in the case, as well as the various defenses Defendants raised.  The arms-length Settlement readily satisfies the standard for final approval—it is "fair, reasonable, and adequate" considering "the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each class member will receive from the settlement." *Cotter v. Lyft, Inc*., 193 F.Supp.3d 1030, 1037 (N.D. Cal. 2016). Plaintiff therefore requests that the Court grant final approval of the Settlement.

## II.    BACKGROUND

Class counsel detailed the background of this case in its motion for preliminary approval. (Dkt. No. 109).  The graveman of the remaining claims in this action is that Defendants

improperly deducted union dues from Valdez's and the other class members' paychecks despite Valdez and class members' request to terminate their union memberships. (*See* Dkt. No. 48 at 4-7). Valdez brought these claims on behalf of all similarly-situated members of SEIU Local 521. Various chapters of Local 521 allegedly maintained excessively onerous termination policies, including with extreme temporal limitations, effectively preventing members from terminating union membership. The parties engaged in substantial discovery regarding Valdez's claims and then participated in mediation with Judge Ryu on September 6, 2019, which resulted in the Settlement.

Plaintiff filed her preliminary approval motion on November 19, 2019 (Dkt. No. 109) and the Court held a preliminary approval hearing on January 9, 2020 (Dkt. No. 117). The Court granted Plaintiff's motion and preliminarily certified the class, approved of the parties' notification and administration proposal and set a fairness hearing for May 21, 2020.

## III.    CLASS NOTICE AND CLAIMS ADMINISTRATION

The Court approved the notice procedures set forth in the Settlement Agreement in its January 15, 2020 Order granting preliminary approval. (Dkt. No. 120). In the Settlement, the parties agreed that Local 521 was in the best position to efficiently administer the notice and distribution process. As detailed in the Lee Declaration (Dkt. No. 124), Local 521 has done a good job administering the notice of settlement.

Local 521 established a website (www.bermudezclasssettlement.org) with the notice and important case documents. It then went through its records and identified 34 additional class members who met the class definition in the Court's preliminary class definition.[1] Local 521 then searched its records and determined that 40 putative class members did not fit the class definition because they were not denied termination due to temporal restrictions and did not

---

[1] The Union had previously excluded those 34 members from the original list of 183 identified members because they had checked the "service fee" box on the Union form, but had otherwise not engaged the formal termination process. Under the class definition preliminarily ordered by the Court, those Union members now formed part of the proposed class. Banys Decl. ¶4.

check the "service fees" box on the Union form, but rather failed to properly notify the Union of their desire to terminate (for example, they failed to terminate in writing, failed to sign the form or failed to send the form to the Union office). Declaration of Christopher Banys (Banys Decl.) ¶ 5. That left 177 class members. Local 521 then mailed the Court-approved notice of class settlement to the remaining 177 individual class members, tracked down the addresses for 5 of the 7 undeliverable notices and mailed duplicates, and prepared a calculation of settlement money to be paid to each class member, according to the formula in the Settlement Agreement. Lee Decl. ¶¶ 3-4, 9-10 (Dkt. No. 124). Local 521 received no objections, no requests to opt out, and no communication from individuals claiming to have been erroneously omitted from the class. *Id.* at ¶¶ 5-8. The time for objections has now passed, under the Court's January 15 Order.

## IV. ARGUMENT

### A. Final Approval of the Settlement Class Is Appropriate

To grant final approval, the Court must find that the class meets the Rule 23 (a) and (b) requirements for certification and that the proposed settlement is fair, reasonable and adequate. The Court previously found, in granting preliminary approval, that the proposed class met the numerosity, comminality, typicality, adequacy, predominance and superiority requirements for class certification. Order at 2 (Dkt. No. 120). In the intervening months, no one has objected to the Court's preliminary findings and no new facts have come to light that would alter the Court's preliminary approval. Thus, the Court should affirm its prior findings and certify the class.

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Valdez proposes that the Court certify the following class for settlement purposes: "All public-sector members of Local 521 from September 10, 2015 through the Preliminary Approval Date who: 1) submitted to Defendants a written request to terminate their membership with Local 521, and thereafter continued to have union dues deducted from their paychecks based on a temporal limitation on resigning from union membership, or 2) who submitted an Employee Authorization for Payroll Deduction of

Union Dues or Service Fees form with the 'Service Fee' box checked, and thereafter continued to have union dues deducted from their paychecks based on Local 521's policy of not treating such forms as indicating a request to resign from union membership."  The proposed settlement class satisfies the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

> 1.    **Plaintiff Satisfies Each of the Four Rule 23(a) Prerequisites.**

"The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

> a)    **The Settlement Class is Sufficiently Numerous and Ascertainable.**

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.  *Rannis v. Recchia*, 380 F.App'x 646, 651 (9th Cir. 2010); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518, at *19 (N.D. Cal. June 20, 2007) ("numerosity may be presumed when the class comprises forty or more members").  In addition, the class should be "ascertainable," *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, Local 521 has already determined from its records that there are 177 county workers who fall within the proposed class.  *See* Banys Decl., ¶¶ 4-5 ; Lee Decl. ¶ 3 (Dkt. No. 124).  Accordingly, the settlement class is both sufficiently numerous and ascertainable.

**b)     Class Members Share Common Issues of Law and Fact.**

In order to satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff must "affirmatively demonstrate" that her claims depend upon at least one common contention the truth or falsity of which "will resolve an issue that is central to the validity" of each one of the class members' "claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). That is, the lawsuit must call upon the court or jury to decide at least one factual or legal question that will generate a common answer "apt to drive the resolution of the litigation." *Id.*; *see also id.* at 359 (holding that "even a single common question" will suffice to satisfy Rule 23(a)) (citation and internal modifications omitted). The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998)).

As the Court previously recognized, resolution of each class member's claim requires resolution of the key questions whether Local 521 had a policy of prohibiting members from resigning outside of certain temporal window periods set forth in Chapter bylaws or certain collective bargaining agreements; whether Local 521 had a policy of treating forms received from members in which they had authorized the deduction of "Service Fees" rather than membership dues as administrative mistakes instead of as resignation requests, or as resignation requests barred by a policy of prohibiting resignation outside the specified temporal window periods; and if so, whether these policies were consistent with the First Amendment. These common questions are sufficient to meet the requirements of Rule 23(a)(2).

**c)     Plaintiff's Claims are Typical of Class Members' Claims.**

Rule 23(a)(3)'s typicality requirement focuses on the relationship of facts and issues between the class and its representatives. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* "The test of typicality is whether other members have the

same or similar injury, whether the action is based on conduct which is not unique to the named

plaintiffs, and whether other class members have been injured by the same course of conduct."

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation

marks omitted).

"Like the commonality requirement, the typicality requirement is 'permissive' and

requires only that the representative's claims are 'reasonably co-extensive with those of absent

class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105,

1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020). "In determining whether typicality is

met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury

caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir.

2007). Thus, typicality is "satisfied when each class member's claim arises from the same

course of events, and each class member makes similar legal arguments to prove the defendant's

liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*,

126 F.3d 372, 376 (2nd Cir. 1997)).

Here, Valdez and all Class Members allege that they have been injured by the uniform

membership resignation practices set forth above in which Defendants allegedly engaged, and all

assert the same claims and request the same damages arising therefrom. Accordingly, as the

Court previously recognized, Valdez meets the Rule 23(a)(3) typicality requirement.

### d)    Plaintiff and Her Counsel Adequately Represent the Class.

Members of a class may sue as representatives on behalf of the class only if they "will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of

two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any

conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, neither Valdez nor her counsel, have any conflicts of interest with other class

members. Valdez does not seek any different relief from the relief that she seeks on behalf of all

other class members.  In addition, Valdez's counsel has also demonstrated their ability to zealously represent the interests of the class by, for example, defeating Defendants' motion for summary judgment with respect to her claims, by obtaining the information necessary to evaluate the merits and damages at issue in the case, by obtaining information necessary to move for class certification, and by negotiating a resolution of this matter that provides Class Members with monetary relief as well as significant non-monetary forward-looking relief.  Moreover, Valdez's counsel has substantial experience litigating and settling class action cases as well as other complex litigation matters.  *See* Banys Decl. I.S.O. Mot. For Prelim. Appr., ¶¶ 19-28 (Dkt. No. 109).

### 2.    Plaintiff Satisfies the Rule 23(b)(3) Predominance and Superiority Requirements.

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022–1023.

### a)    Common Issues Predominate Over Individualized Issues.

As discussed above, all Class Members are alleged to have been injured by the alleged uniform practices of Defendants limiting the time period during which members could terminate their union membership and failing to process changes on authorization for payroll deduction forms as requests to resign membership.  Thus, for all Class Members, the key questions for liability are whether those Defendants engaged in those practices and, if so, whether they violated the First Amendment.  These common legal questions predominate over any individualized issues, such as how much in damages any particular Class Member suffered as a result of these practices.

**b)**     **A Class Action Is Superior to Hundreds of Individual Actions**

"[T]o meet the requirement of superiority, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 604 (N.D. Cal. 2015). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.* "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.

Here, a class action settlement is the superior method of resolving the claims of 177 members of Local 521 for several reasons: First, the resolution in a single class action settlement of the common questions of the application, if any, of PERB preemption; whether a 42 U.S.C. § 1983 claim can be maintained; the existence of Defendants' alleged restrictive membership-resignation practices; and the legal ramifications any such practices would be more efficient than having the Court address each of these issues 177 times in separate cases. Such a class settlement would relieve the class members of proving up each of these common issues in separate trials, and would also eliminate any concerns about manageability that might arise were the Court to have to address the individualized questions of damages or liability presented by the class members' claims. Further, individual proceedings over damages that for the vast majority of Class Members will likely not exceed $1,000 (for example, Valdez's estimated damages for her claims are, at most, under $900) are both inefficient and unrealistic. Banys Decl. I.S.O. Mot. For Prelim. Appr., ¶¶ 19-28 (Dkt. No. 109).

For all of these reasons, the proposed class should be certified for settlement purposes.

**B.     Class Notice Was Reasonable And Adequate.**

For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who

can be identified through reasonable effort.  *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953, at *10 (N.D. Cal. Aug. 21, 2015).  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Id.* (citing *Churchill Village, L.L.C. v. General Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004), internal quotations omitted).

Here, the Court previously recognized that the Class Notice satisfies each of the above requirements.  Local 521 preformed a reasonable search and located the vast majority of class members, ultimately mailing notice to 175 of 177.  Local 521 also set up a website www.bermudezclasssettlement.com, where Class Members could obtain detailed information regarding the case and the Settlement.  The Class Notice and the method of distributing it to the class reasonably and adequately provided notice to class members.

## C.    The Settlement Is Fair, Reasonable, and Adequate And The Court Should Finally Approve It.

The law favors compromise and settlement of class claims.  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015); *Norris v. Mazzola*, 2017 WL 6493091 at *4 (N.D. Cal. Dec. 19, 2017) "(Judicial policy strongly favors settlement of class actions.").  Indeed, courts are to give deference to the decision of the parties to settle, so long as the settlement, taken as a whole is fair, reasonable and adequate to all concerned.  *Hanlon*, 150 F.3d at 1027.  The inquiry should be whether the settlement is "fair, reasonable, and adequate," considering "the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each

class member will receive from the settlement." *Cotter*, 193 F.Supp.3d at 1037. "When determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement confers." *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015). Other factors relevant to preliminary approval are whether the settlement (1) falls within the range of possible approval; (2) is the product of serious, informed, noncollusive negotiations, (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or segments of the class. *See Deaver*, 2015 WL 4999953, at *6; *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).

### 1. There Are Substantial Risks Associated With Further Litigation

A careful risk/benefit analysis must inform Counsel's valuation of a class's claims. *Lundell v. Dell, Inc.*, No. C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving settlement that was "the product of uncertainty and careful risk/benefit analyses on both sides").

As discussed above, there are substantial risks that Valdez would not succeed in obtaining class certification, and that she would not overcome Defendants' various defenses to her claims. There is also a substantial risk that the total amount of damages to the class might not be large enough to justify the investment of time and resources into pursuing this case all the way through trial.

### 2. The Settlement Provides Substantial Non-Monetary and Monetary Value to Class Members

With these risks in mind, the next step of this analysis is the evaluation of the nonmonetary and monetary terms of the settlement agreement. *Miller*, 2015 WL 758094, at *5. In the Ninth Circuit, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). This is due, in large part, to

the potential pitfalls of further litigation.  *See In re Omnivision Techs., Inc*., 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) ("Plaintiffs here have agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing.").  Thus, the monetary value of the settlement need not meet any particular percentage threshold of the overall potential value of the case.  *Id*. Additionally, "finality and speed of recovery" weigh in favor of approval, especially where there is a risk that the Class could receive less by proceeding through litigation.  *Deaver*, 2015 WL 8526982, at *7.

As detailed in Plaintiff's motion for preliminary approval, Valdez calculates that the settlement funds will amount to nearly 20% of the maximum estimated value of the case.  *See* Banys Decl. I.S.O. Mot. For Prelim. Appr., ¶ 13 (Dkt. No. 109).  Thus, the $75,000 monetary component of the settlement is within the range approved of by courts.  *See In re High-Tech Employee Antitrust Litig*., No. 11-CV-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving settlement valued at 14% of available damages).  And all net settlement funds will be distributed to Class Members or the agreed-upon *cy pres* recipient; no funds will revert to Defendants.

In addition, this settlement agreement also contains an important non-monetary component, discussed above.  This provides practical and on-going benefits to Class Members as well as other existing and future union members, and strongly supports preliminary approval. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance."); *Singer v. Becton Dickinson & Co*., No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *5 (S.D. Cal. June 1, 2010) (holding that non-monetary benefits to the class members weighed in favor of granting final approval of the settlement).

Ultimately, after consideration of the monetary and non-monetary terms of the settlement, and after assessment of the substantial risks of further litigation, Valdez's counsel,

drawing on years of experience litigating cases like this one, and with the input of Judge Ryu, determined that agreement is fair and reasonable and constitutes a positive result for the class in this case. This settlement falls within the range of possible approval, and the Court should grant the settlement preliminary approval. (Banys Decl., ¶ 18). *See Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D.Cal.1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

### 3. The Settlement Is the Product of a Full-Day, Arms-Length Mediation Under the Guidance of Judge Ryu.

"[T]he means by which the parties arrived at settlement" is also relevant to determining whether it is fair and reasonable. *Harris v. Vector Mktg. Corp.*, No. 08–5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Additionally, "the use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at *7 (citing *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA-EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Harris*, 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"). Here, the parties settled after a full-day mediation in front of Judge Ryu.

### 4. The Settlement Has No Obvious Deficiencies

It is also important to consider "whether there are obvious deficiencies in the Settlement Agreement." *Deaver*, 2015 WL 4999953, at *7. Such "obvious deficiencies" may include an overbroad release, insufficient notice, or an inadequate form of payment. *See, e.g., Custom LED, LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013).

Additionally, an attorneys' fee provision may also be preliminarily evaluated as part of this inquiry, subject to final approval. *See, e.g., Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011).

Here, Class Members will release only those claims that could arise from Defendants' time restrictions on union membership terminations and from Local 521's policy of not construing a member's checking the "Service Fee" box on the "Employee Authorization for Payroll Deduction of Union Dues or Service Fees" form as indicating an intent to resign from union membership. *See Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1334 (N.D. Cal. 2014) ("while the scope of the release in the proposed settlement is broad, it is acceptable because the claims released are limited to those based upon the facts set forth in the First Amended Complaint."). The parties have also carefully constructed a formula for payments to class members to ensure an equitable distribution of the settlement funds. No unclaimed funds will revert to Defendants. Additionally, the class notice provides all required information to Class Members in an easy-to-read format, as discussed above.

### 5. Counsel's Experience And Class Member's Response Weigh In Favor Of Final Approval.

In addition, counsel's judgment that the Settlement is fair and reasonable is entitled to great weight. *See Churchill*, 361 F.3d at 576-77 (Ninth Circuit took into account the views of class counsel and defendants' counsel in support of the settlement). In fact, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural Telecomms.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11.41.

### 6. The Claims Process Is Convenient And Efficient.

Class members received notice and information about the Settlement through the Court-

approved notice procedure. The claims process is designed to be ***opt-out*** with no reversion, and because no members objected or asked to be excluded, the claims rate in this case should be near-universal. Thus, the Settlement's method for processing claims is fair and reasonable.

### 7.     The Requested Attorney Fees And Expenses Are Reasonable.

The attorneys' fee provision permits Valdez's counsel to apply for fees and costs not to exceed $25,000; attorneys' fees will be paid out separately by Local 521, and will not have any impact on the settlement fund; and the settlement is not contingent upon the Court approving counsel's application. As briefed in Plaintiff's motion for attorney fees (Dkt. No. 122), Valdez's counsel's request for $25,000 in fees and costs is reasonable, and actually represents significantly less than the actual amount of time and resources that Valdez's counsel invested in this litigation.

### 8.     The Allocation is Fair and Reasonable.

Lastly, it is relevant to assess whether the allocation of the settlement fund may "unfairly benefit certain class members." *Tijero v. Aaron Bros., Inc*., No. C 10-01089 SBA, 2013 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013). "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co*., No. 13-CV-00729-HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (citing cases). However, "courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (citing *Nguyen v. Radient Pharm. Corp*., No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)).

Here, Class Members will receive settlement amounts in proportion to the actual amount of union dues that Defendants collected from them during the damages period. This is an equitable way of distributing the settlement fund among all affected Class Members.

Additionally, under this factor, a court may also preliminarily consider the propriety of agreed-upon class representative enhancements, which, like a request for attorneys' fees and

costs, is subject to further review on final approval. *Deaver*, 2015 WL 4999953, at *8. The $500 agreed-upon enhancement for Plaintiff is reasonable given the amount of time she has expended in pursuing this action and assisting her Counsel in discovery, in opposing Defendants' motion for summary judgment, and participating in mediation. It is also in line with awards in other cases in California district courts. *See, e.g., Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *5 (N.D. Cal. Mar.31, 2015) (awarding $7,500 to each of the four class representatives from $750,000 fund).

## V.    CONCLUSION

For the foregoing reasons, Valdez respectfully requests that the Court grant this Motion for Final Approval and issue an order:

(1) Granting final approval of the Settlement, directing payment of claims, attorney fees and enhancement and issuing final judgment;

(2) Certifying the Settlement Class;

(3) Appointing Plaintiff Valdez as Class Representative; and

(4) Appointing Banys, P.C. to represent the class as class counsel.


Dated: May 7, 2019                          Respectfully submitted,



                                            By: */s/ Christopher D. Banys*
                                            Christopher D. Banys
                                            cdb@banyspc.com
                                            BANYS, P.C.
                                            567 Marsh Street
                                            San Luis Obispo, CA 93401
                                            Telephone:  (805) 996-0394
                                            Facsimile:  (650) 353-2202

                                            **ATTORNEYS FOR PLAINTIFFS
                                            AND THE PROPOSED CLASS**